[S. F. No. 3133.   Department Two.—June 2, 1903.]

In the Matter of the Estate of OLIVE J. WICKES, Deceased.
ANNETTE P. CLARK, Contestant, Appellant, v.
JAMES M. SHANNON, Proponent of Will, Respondent.

ESTATES OF DECEASED PERSONS—CONTEST OF WIFE'S WILL—BEQUEST
TO PHYSICIAN—WILL OF HUSBAND—SUPPORT OF FINDINGS.—Where
the will of a wife bequeathed her whole estate to the physician
who attended her during her last illness, and was contested by the
president of a home for incurables, to whom her dying husband had
bequeathed his whole estate, and it appeared that neither of
them had heirs, and the wife had provided for the support of her
husband during life at said home, and for his interment, and the
court found, upon sufficient evidence, that the wife was mentally
competent when she made her will, and that it was executed freely
and voluntarily, and without restraint or undue influence of the
physician, the findings in his favor as proponent of the will
must be sustained.

ID.—RIGHT OF LEGATEE OF HUSBAND TO CONTEST WIFE'S WILL—QUERY.
—The question whether the right of the husband to contest the
will of his wife is personal, and cannot pass by assignment or tes-
tamentary transfer to his legatee, is stated as a query, but not
determined.

ID.—CREDIBILITY OF WITNESSES—PROVINCE OF JUDGE.—Whether the
evidence is sufficient to sustain a will must in all cases mainly de-
pend upon the credibility of the witnesses by whom the testimony
is offered, and how far credibility should be given to their testi-
mony is to be determined solely by the judge who heard it, and his
judgment thereupon is conclusive upon this court.

ID.—CONFIDENTIAL RELATION OF PHYSICIAN AND PATIENT—BURDEN OF
PROOF—SCRUTINY OF COURT.—Though the confidential relation be-
tween physician and patient excites the suspicion and jealous
scrutiny of the court, and the burden of proof is cast upon the
physician to satisfy the judge that such suspicion was unfounded,
and to show that the will was the free and voluntary act of the
patient, yet where it clearly appears that the patient was of sound
mind, and acted freely and voluntarily, the will is valid, notwith-
standing such relation.

ID.—INDEPENDENT ADVICE NOT REQUIRED.—Where it appears that the
bequest to the physician was at the voluntary suggestion of the
patient, and the attorney who drew the will was selected by the
proponent at her suggestion, and she fully comprehended the
nature and effect of the transaction, it was not necessary to show
that she had other independent advice, which she was not prevented
from seeking.

ID.—ORDER OF PHYSICIAN—ADMISSION OF VISITORS—HEARSAY—PRELIMI-
NARY EVIDENCE.—It was not error for the court to strike out the
evidence of a witness as to an order of the physician not to admit
visitors, where such evidence appeared to be merely hearsay; and
it being a necessary preliminary to show an order of the physician,
it was not error to exclude evidence of the same witness as to
whether all persons who called were admitted to see the patient.

APPEAL from an order of the Superior Court of the City
and County of San Francisco admitting a will to probate.
J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Otto tum Suden, and George D. Squires, for Appellant.

From the confidential relation of physician and patient, the
will is presumed void from undue influence. (Civ. Code, secs.
1575, 2219, 2235; *Estate of Kohler*, 79 Cal. 313; *Ross* v. *Con-
way*, 92 Cal. 632; *Pironi* v. *Corrigan*, 47 N. J. Eq. 135; *Ash-
well* v. *Lewis*, L. R. 2 Pro. & D. 477.)

Z. N. Goldsby, P. F. Dunne, and B. H. Griffins, for Re-
spondent.

The right of Mr. Wickes to contest his wife's will was not
assignable, did not pass to Mrs. Clark, and she has no right
or standing here as a contestant. (Code Civ. Proc., secs. 1307,
1327; *McDonald* v. *White*, 130 Ill. 493, 497; *Storrs* v. *St.
Luke's Hospital*, 180 Ill. 368, 375;[1] *Staude* v. *Tscharner*, 187
Ill. 19.) In testamentary dispositions the presence or ab-
sence of independent advice is not controlling or decisive.
The evidence here shows that Mr. Goldsby acted as the at-
torney for Mrs. Wickes; that he drew the will in accordance
with her instructions, conveyed to him by Dr. Shannon; that
he was her lawyer, her legal adviser, in the matter. But
even if he had not been her adviser, and if he had acted for
Dr. Shannon—yet, if Mrs. Wickes desired and intelligently
approved the will in question, her right to make such a dis-
position of her property is unquestionable. (*Butlin* v. *Barry*,
1 Curt. Ecc. 614; *Hindson* v. *Weatherill*, 5 De Gex, M. & G.
301; *Daniel* v. *Hill*, 52 Ala. 430, 432; *Henry* v. *Hall*, 106 Ala.
84;[2] *Crispill* v. *Dubois*, 4 Barb. 393; *Montague* v. *Allan*, 78

[1] 72 Am. St. Rep. 211.                    [2] 54 Am. St. Rep. 22.

Va. 592;[1] *Post* v. *Mason*, 91 N. Y. 539, 549-559;[2] *Smith's Will*, 95 N. Y. 516, 523; *Ashwell* v. *Lewis*, L. R. 2 Pro. & D. 477; *Parfitt* v. *Lawless*, L. R. 2 Pro. & D. 462, 469, 470; *Rayworth* v. *Marriott*, 1 Mylne & K. 643; *Estate of Carpenter*, 94 Cal. 412; *Estate of Kaufman*, 117 Cal. 295, 296;[3] *Estate of Wilson*, 117 Cal. 277.)

LORIGAN, J.—This is a will contest, and from an order admitting the will to probate contestant appeals.

The general facts are as follows: Olive J. Wickes and Alfred M. Wickes were husband and wife, well advanced in years, childless, and without kindred, direct or collateral. She was possessed of considerable separate property; he had nothing. Both were suffering from incurable disease,—she from cancer, he from paralysis,—and the interval between their respective deaths was short. Prior to his demise he was an inmate of the hospital of the King's Daughters' Home for Incurables in San Francisco, where he had been placed by his wife, who had made full, ample, and permanent provision for his comfortable maintenance during the few years he had to live, and for his funeral and burial.

She at the time of her death was an inmate of the Fabiola Hospital, at Oakland, where she died on November 5, 1898, leaving this will in controversy, executed a month prior thereto, whereby she bequeathed her entire property to the proponent, Dr. J. M. Shannon, the attending physician at the hospital, and who had been, both prior and subsequent to her going there, her physician and surgeon, and attending her during her last illness.

Thereafter, and on the twenty-fourth day of December following her death, her husband died at the said home for incurables, leaving a will dated two days before his death, by which he made Mrs. Annette P. Clark, president of said home, his sole legatee. His will was duly admitted to probate, and Mrs. Clark, who was nominated therein as executrix, duly qualified as such.

Mrs. Wickes's will was subsequently offered for probate by Dr. Shannon in the superior court of San Francisco, and

[1] 49 Am. Rep. 384.     [3] 59 Am. St. Rep. 179.
[2] 43 Am. Rep. 689.

thereupon Mrs. Clark, as residuary legatee under the will of Mr. Wickes, inaugurated this present contest upon the familiar grounds of mental incapacity of Mrs. Wickes at the time of the execution of her will, and fraud and undue influence exercised by Dr. Shannon, the principal devisee thereunder.

Neither proponent nor contestant are, either by blood or affinity, related to their respective testators, and to the extent that it may be hereafter determined effective, the testamentary disposition in favor of either of them (in the absence of natural claimants) was no doubt actuated, through that generous impulse, which prompts the old and infirm, to reward kindly ministrations and considerate attention in their declining days, by favorable testamentary bequests.

While this fact can make no difference in the right of the parties here, to have applied to this case the general legal principles which control inquiries concerning alleged insanity and undue influence, yet, the fact that they are not the natural recipients of their testator's bounty, narrows the application of these rules, and removes from consideration perplexing questions with which a will contest is usually fraught, and simplifies our inquiry.

However, we do not entirely escape its presentation, for at the very threshold of this appeal the proponent insists, that the contestant was not entitled to maintain this action in the court below, or to be heard on the appeal here.

Succinctly stated, the point made is, that the right to contest a will which is offered for probate is a personal privilege; that it cannot pass by assignment, and cannot accrue through testamentary transfer; and that Mrs. Clark, being but a testamentary beneficiary under the husband's will, has neither right nor standing to contest the will of his wife.

Whatever merit there may be in this special point, from the conclusion we reach in the main case, it becomes unnecessary to dispose of it.

As said, the contestant interposes as grounds why the will of Mrs. Wickes should not be allowed probate, both want of testamentary capacity in Mrs. Wickes at the time of making her will, and fraud and undue influence on the part of Dr. Shannon, the beneficiary thereunder, in its procurement.

The contest was tried before the judge of the probate court, a jury having been waived, and from his findings against the contestant on both these issues this appeal is taken. The record in this case is made up of some two hundred and fifty pages, purporting to contain all the testimony in the case, and we have given it careful attention.

There is nothing in it to substantiate, even in a remote degree, the claim that Mrs. Wickes was mentally unsound when the will was executed. In fact, the evidence tends to show directly the contrary. Various witnesses, persons who were constantly about her, at and about the date of making the will, called by the contestant, presumably on both issues, were not even inquired of concerning her mental capacity. While it is open to some dispute, we do not think that it would be fair to the contestant herself, to understand her as claiming that on October 5th, the date the will was executed, Mrs. Wickes was mentally unsound, because three days later she called on her at the hospital with an attorney to have Mrs. Wickes execute a power of attorney in her favor, which the latter declined to do. On the other hand, many persons, whose opportunities for observation were favorable, testified emphatically upon the subject of her mental capacity at the date involved, in support of it. In fact, our careful examination of the brief of the attorneys for contestant satisfies us that no particular stress is laid upon this claim, the point principally urged being that the will was procured through the undue influence of Dr. Shannon. But, as is said upon the matter of insanity, we cannot discover any testimony in the record which supports this claim. If we correctly understand the position of counsel expressed in their brief, they do not contend that undue influence was established as a matter of fact, or that any facts were proven which show its existence, but rather claim that, as matter of law, it is presumed from proof of the relationship which the physician occupied to the testatrix at the time the will was made in his favor. They say in this regard: "We are aware that in this case the testimony of Mr. Goldsby, Dr. Shannon, and Dr. Pratt, as matter of form, is sufficient to entitle this will to probate; but we submit that on the ground of public policy their testimony should not be held sufficient." But insanity and undue influence were the

substantive grounds the contestant took against the will, and if the testimony of these witnesses entitled the will to probate, it was because the court must have found they did not exist in fact; it must necessarily have found the converse to be true—that the evidence proved that testamentary capacity and absence from restraint accompanying the execution of the will. Whether evidence is sufficient to sustain a will, must in all cases mainly depend on the credibility of the witnesses by whom the testimony is offered, and how far credibility should be given to their testimony is to be determined by the judge who heard it. That matter is solely committed to him, and his judgment upon it is conclusive upon us.

In this case the lower court passed on that question. Counsel concedes that, *pro forma,* the credibility given to the testimony established the will, and our examination of the record satisfies us that it correctly sustained it in point of fact. When the evidence in this case is examined, the facts relating to alleged undue influence present this situation: The testatrix, by reason of her physical affliction, realized that her death was rapidly approaching, and that the only person having any claim on her—her husband—was within the same shadow. She had made ample payment for his comfort during the limited time he could live and provision for his interment; neither of them had any relation, who in case of the death of either, would be entitled to succeed to their property, and in the absence of testamentary disposition in favor of some one it would escheat to the state.

Under these circumstances, and after being under the care and constant attention for some six months of Dr. Shannon, Mrs. Wickes declared her intention to him of making this will in his favor, giving as a reason which prompted her to it, that her husband was fully provided for, that she had no relations to leave it to, and wished to leave it to him as he had been very kind to her, as much so as a son, and that she had no heir to leave it to except her husband, whom she expected to die at any time. She asked him to have a will prepared in harmony with her wish. To this end he conferred with an attorney (Mr. Goldsby), who prepared a will, and, accompanied by Dr. Shannon and a Dr. Pratt, he went to Mrs. Wickes's room at the hospital. Dr. Shannon retired from

the room, the attorney and Dr. Pratt remaining. Mr. Goldsby then stated to Mrs. Wickes that he was informed she wished to make a will, to which she responded in the affirmative, and, being further asked as to what kind of a will she wished to make, stated that she wanted him to draw a will giving everything she had to Dr. Shannon. Something in a general way was further said about the will, and she again expressed her desire to give everything she had to the doctor, saying that she did not want to give anything to any one else, as he had been the best friend she had. The attorney then informed her that he had already prepared such a will, which he said he would carefully read, and desired her to state whether it was what she wanted. The will was read over to her twice, and she said it was just what she wanted. The matter of an executor and his bond was discussed, and she said she wished Dr. Shannon appointed the executor, without requiring him to give any bond, as everything was going to him anyway. Her property was discussed, and she said she had a lot in the cemetery, where she wished that she and her husband should both be buried; that he was an invalid in the home for incurables in San Francisco; and that she had provided for him during life, and for his burial and funeral expenses.

The will was then properly executed, and upon Dr. Shannon returning to the room Mrs. Wickes delivered it to him. While the will was being discussed, she stated to Dr. Pratt that she had been under Dr. Shannon's care for some time before he knew she had any property; he had been exceedingly kind to her, as much so as a son could be, and she felt as though she wanted to reward his kindness and courtesy to her, and she took the only means that was in her power, and wished that all of her possessions should pass after her death to him. It further appears that during his treatment of her Mrs. Wickes had paid him for his services but twenty dollars. The evidence further shows that while Mrs. Wickes was at the hospital she was visited by her friends, and no one visiting her was prevented from seeing her, except on two occasions, when a Mrs. Nichols called and was refused admission by one of the nurses, who stated that Mrs. Wickes was too weak to see her.

This sufficiently states the facts to illustrate the main point made by counsel, which is, that as it appears that the testatrix and beneficiary sustained toward each other the confidential relation of patient and physician, and at the time the will was executed the testatrix had no independent advice concerning it, that it is therefore, as matter of law, to be presumed that undue influence was exercised. There is no doubt of the general principle announced, that in transactions, such as the one under consideration here, which may involve an abuse of confidence, they are scrutinized with great care by the court. The rule rests upon the principle, that proof of such confidential relationship excites the suspicion and jealousy of the court, and casts the duty on the beneficiary, affirmatively, to satisfy the conscience of the judge that such suspicion is unfounded. When that has been done,—speaking now of wills,—and satisfactory proof offered, showing the sound mind and knowledge of the testatrix of the contents of the will, and that it is a free expression of her intention, the will is valid, notwithstanding such relation. A person in possession of all his faculties, and acting freely and voluntarily, may make such disposition by will of his property as he deems best. Nor, will the existence of confidential relations, prevent such exercise in favor of one of the parties occupying it, where the mental capacity and volition of the testator is apparent; it only casts on him the burden of proving that the testamentary disposition in his favor was freely and voluntarily made. If the facts above stated be true, and they were so found to be by the lower court, and are sustained by the evidence, the respondent has met the requirements of the law, and has shown that in no manner was Mrs. Wickes subject to his influence, nor was influence, artifice, or fraud practiced in relation to her bequests in his favor.

Her mental capacity to make a will is fully proven. She was under no restraint; the bequest was her own suggestion, and prompted by gratitude and appreciation of kindness bestowed on her by her physician; she had no relatives to bestow it on if she wished; her husband she had fully provided for; she realized that he had not long to live (in fact, he died less than two months afterwards), and that to dispose of it in his favor could afford him no benefit, save to

permit a testamentary disposition by him (as he had no heirs), to some friend, or, dying intestate, allow it to escheat to the state. Understanding his physical condition, it is easily conceivable why, if her property was ultimately to go to a stranger in blood, she should prefer to make the disposition herself, to one who had kindly ministered to her in her suffering, rather than to permit her husband, when it could not materially benefit him, to obtain her propeity to bestow it upon some one equally kind to him, but to whom she was under no obligation.

The point made, that the testatrix should have had independent advice, is not tenable. The evidence warrants the conclusion, that the attorney who prepared the will was her attorney, selected by the proponent at her suggestion, as in her condition she could not seek one. But if he was not, she was not prevented from seeking advice, and she expressed no desire to have any. She fully comprehended the nature and effect of the transaction. It was her own desire to dispose of her property as she did, and, doubtless, a conclusion arrived at after due consideration and reflection, and carried out freely and intelligently, with full knowledge of its effect.

We think the evidence fully sustains the findings of the court on both issues.

Several errors of law are assigned, which we now note. The court did not err in striking out answers of the witness Ryan, as to an order she stated she knew Dr. Shannon had left about admitting visitors to see Mrs. Wickes. Her answers were evidently hearsay, as she testified subsequently that she could not say positively that she heard him give any orders to any person whatever on the subject; nor did she remember receiving orders concerning Mrs. Wickes from anybody. Nor did the court err in sustaining proponent's objection to a general inquiry, put to the same witness, as to whether all persons who called to see Mrs. Wickes were admitted. It was necessary, preliminarily, to introduce some evidence tending to connect the physician with any refusal to admit, if refusal was made, and this was one of the grounds of objection. There is nothing in the other error assigned on the examination of this witness.

Any error arising from refusing to allow Mrs. Clark (con-

testant), on direct examination, to give her opinion of Mrs. Wickes's mental capacity on October 5th, was cured by her testifying fully on the subject subsequently.

The last two errors assigned, relative to the witnesses Burke and Goldsby, are without merit, and mentioned simply to show they were not overlooked.

The order and decree appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.