[L. A. No. 6047.   Department Two.—November 15, 1919.]

## In the Matter of the Estate of CAROLYNN E. NUTT, Deceased.

[1] ESTATES OF DECEASED PERSONS—WILL CONTEST—FRAUD AND UN-DUE INFLUENCE—SUFFICIENCY OF EVIDENCE.—In this contest to a will on the grounds of fraud and undue influence, the uncontradicted facts created *prima facie* a condition which justified the verdict of the jury and the judgment of the court.

[2] ID.—UNDUE INFLUENCE—CONFIDENTIAL RELATIONSHIP—BURDEN OF PROOF.—If a confidential relation between the testatrix and the beneficiary appear, coupled with activity of the latter in the preparation of the will, a presumption of undue influence arises and the burden is on the beneficiary to show that the testament was not procured by undue influence.

[3] ID.—CONFLICT OF EVIDENCE—CONCLUSIONS OF JURY—APPEAL.— Where in a will contest the evidence is conflicting as to the strength of mind of the testatrix, the conclusions of the jury and court cannot be overturned by the appellate court.

[4] ID.—CREDIBILITY OF WITNESSES—DETERMINATION OF TRIAL COURT.— Whether evidence is sufficient to sustain a will must in all cases mainly depend on the credibility of the witnesses by whom the testimony is offered, and how far credibility should be given to

their testimony is to be determined by the trial judge, and his determination is conclusive upon the appellate court.

[5] ID.—PLEADING—COUNTS ALLEGING DOMINATION AND SUPPRESSION.— In a will contest, a count alleging domination of mind of the testatrix was not incompatible with a count alleging suppression of facts, since domination and suppression are sometimes hand-maidens of fraud, working together.

[6] ID.—INSTRUCTION—DEFINITION OF WORD "FACT."—There was no error in the court's refusal to give in the instructions in a will contest a definition of the word "fact," since the court is not called upon to define simple words employed in instructions.

[7] ID.—TRUST AGREEMENT WITH TESTATRIX—RIGHT OF PROPONENT— INSTRUCTION.—In a will contest the court properly declined to give an instruction to the effect that as matter of law the proponent of the will had a right to enter into a trust agreement with the testatrix, although the trust agreement was in evidence, since the proposed instruction contained merely the statement of a commonplace, and because the proceeding was a will contest and not a suit to invalidate a trust.

[8] ID.—QUALITY OF TRUST FUNDS—INSTRUCTION.—An instruction to the effect that the quality of trust funds deposited by a trustee in his own name is not changed merely because he failed to place the designation "trustee" after his name, was correctly refused, where not pertinent to the issues.

[9] NONSUIT — ARGUMENT OF MOTION — EXCUSING JURY — DISCRETION.—Whether jurors should be excused during the argument of a motion for a nonsuit is a matter entirely within the discretion of the trial court.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Stephen G. Long and Hahn & Hahn for Appellant.

M. B. Butler for Respondent.

MELVIN, J.—This is an appeal by the proponent of an alleged will of Carolynn E. Nutt, deceased, from a judgment in favor of Martha and David Nutt, beneficiaries under an earlier will, who, being minors, sued by their guardian *ad litem* contesting the validity of the purported will of later date.

It appears, without conflict, that proponent of the later will, W. Ray Simpson, is the husband of Dr. A. Winegar

Simpson, a physician practicing her profession at Long Beach. Mr. Simpson was connected with the Long Beach Sanitarium as manager. To that institution Mrs. Nutt came as a patient of Dr. Simpson in June, 1917. Later, the physician correctly diagnosed the malady of the patient as pellagra, and told Mrs. Nutt that she was afflicted with that disease.

In the month of August, 1917, Mrs. Nutt sent for Mr. George M. Martin, an attorney at law, and, after consulting with him, caused him to prepare a will, which, on the seventeenth day of August, 1917, was executed in due form. By this will, the contestants herein, who are niece and nephew, respectively, of the late husband of Mrs. Nutt, were made her sole beneficiaries.

In the month of September, 1917, Mr. Simpson entered into negotiations with Mr. Long, an attorney, and under the former's instructions certain instruments were prepared by which disposition was made of all of Mrs. Nutt's property (amounting in value to about fifteen thousand dollars). One of these was the will afterward successfully attacked in this suit. This and the other writings were brought by Mr. Long to the sanitarium on the twenty-fourth day of September, 1917, and were first taken by Dr. Simpson to Mrs. Nutt's room. Half an hour later Mr. Long and a notary were admitted to the sick-room, and there the will was executed with due formality, Dr. Simpson being present all the time. Mrs. Nutt also executed the following instruments: 1. A declaration of trust whereby, in consideration of the transfer to him of all of her property, Mr. Simpson promised to furnish Mrs. Nutt with all necessary medical attendance, food, clothing, etc., during her life, such care to be paid for out of the income and principal of the property, and if more money should be required, out of the private funds of said W. Ray Simpson. 2. An assignment of a note for five thousand dollars and accompanying mortgage. 3. A grant deed to Mr. Simpson of lots in Oklahoma worth four thousand five hundred dollars. 4. An assignment of two thousand four hundred shares of stock of the Yellow Pine Mining Company, worth about three thousand seven hundred dollars. Mr. Long was hired and paid by Mr. Simpson. Mr. Martin was not summoned nor was any other lawyer called to give the sick woman independent

advice. Mr. Long, in preparing the necessary papers, had not conferred with Mrs. Nutt, but had obtained his information from Mr. Simpson.

On the day following the execution of the will Mr. Simpson prepared a letter which was taken by Dr. Simpson to Mrs. Nutt for her signature. By this letter the writer demanded custody of the earlier will from the trust company having it for safekeeping, and the instrument was returned to the hospital.

Mrs. Nutt died on the 4th of October, 1917.

The purpose of the transactions attacked by contestants was to provide for Mrs. Nutt's care and treatment during her life, even if she should live so long that without the creation of a trust or arrangement such as was contemplated, all of her financial resources would have been exhausted.

Mrs. Nutt had great confidence in her physician.

It also appears that the physician was present at the time of the execution of the will; that she remained in close physical contact with Mrs. Nutt; that she passed to the invalid the pen for signing the will; and that just before the execution of the instrument she said to her patient: "Never mind, Mrs. Nutt, it will be all right," or words to that effect.

At the request of the patient, Dr. Simpson had written to a kinsman of Mrs. Nutt's deceased husband asking for financial aid to pay the expenses of the invalid's treatment, as her income was insufficient to meet those charges. This letter dated September 9, 1917, is of strong significance, both as an indication of the relations between physician and patient and as expressing the former's belief in the very serious condition of Mrs. Nutt. The following quotations from the letter will serve to illustrate its value to the court and jury in the trial of the case: "She is in a critical condition as you will understand when I tell you she is suffering from pellagra. She has not been well since her husband's death and has without doubt been suffering from this disease for a number of years. Her suffering is intense and the depression is indeed distressing. She is obliged to have a nurse with her day and night—one nurse cares for her during the day and another sleeps in her room and cares for her at night. She feels very lonely and

I have tried to be to her not only a physician but a friend.
. . . Her condition is critical and it is a very grave question
whether she will recover. Since treating her for this dis-
·ease she has improved some but we cannot yet say what the
outcome will be nor how long she may live. . . . Unless she
makes greater improvement soon I fear she will not live
long.''

[1] All of the foregoing facts appear without conflict and
it is evident that they create *prima facie* a condition which
justifies the verdict of the ·jury and the judgment of the
court. The jury, by special verdict, found that appellant or
his wife had exercised the confidence and authority imposed
in them by Mrs. Nutt for the purpose of obtaining an unfair
advantage over her; that the contested will was the product
thereof; that unfair advantage was taken of Mrs. Nutt's
distress of mind; and that facts known to proponent or his
wife to be true had been suppressed from Mrs. Nutt, such
suppression influencing the making of the will.

[2] Respondents rely upon the rule that if a confiden-
tial relation between the testatrix and the beneficiary
appear, coupled with activity of the latter in the prepara-
tion of the will, a presumption of undue influence arises
and the burden is on the beneficiary to show that the testa-
ment was not procured by undue influence (citing *Estate
of Baird,* 176 Cal. 381, [168 Pac. 561]), and the rule that
any undue influence exercised by Dr. Simpson would be
imputed to appellant (citing *Ross* v. *Conway,* 92 Cal. 632-
637, [28 Pac. 785]).

Appellant seems to concede the first of these rules, but
insists that he has met the burden which the law imposes.
With this assertion we are unable to agree.

It is appellant's first contention that Mrs. Nutt was of so
strong mind that she could not be easily influenced. [3]
Upon this matter there was a conflict of evidence which pre-
vents this court from overturning the conclusions reached
·by the jury and the court. Certain it is, in view of the
undisputed facts, that the sick woman *did* radically change
her mind within the period of a few weeks.

It is next contended that her mind was not weakened by
her illness. Yet, when the purported will was executed she
was under the constant care of nurses, and the testimony of
some of the witnesses tended to show that she uttered no

word at the time of the execution of the will, indicating her answers to questions by pantomime.

During the time that Dr. Simpson was discussing the condition of Mrs. Nutt with the latter the patient was told that if she could live until cool weather set in she had a good chance to recover; that she might pass out quickly, or that she might live a long time; and it is argued that this was a sincere expression of opinion justified by the history of the disease. There was some conflict in the testimony of the medical experts relative to pellagra, which is a rare disease in this climate, but there was testimony to the effect that when the disease reaches the stage in which the patient suffers from sore mouth and profuse flow of saliva, the probabilities of early dissolution are very great, and that this is known generally to physicians. Dr. Simpson herself said that she noticed some soreness of the patient's mouth about the middle of September, and there was testimony regarding the undue amount of saliva at the time of the execution of the will.

It would be useless to review in detail the mass of testimony given in this case. It is sufficient to note that appellant and his wife offered no adequate excuse for their failure to secure for this unadvised widow living in their institution (and suffering from a disease which, according to Dr. Simpson's certificate signed at the time of Mrs. Nutt's death, had existed about six years) that sort of advice to which she was entitled under the existing circumstances. The preparation of the will by a lawyer who obtained all his knowledge from appellant and was neither requested to consult nor given opportunity of adequate conference with the testatrix speaks volumes against the good faith of the Simpsons. Upon the whole record we find most abundant justification for the judgment.

In the briefs of appellant and in the oral argument our attention was directed to the case of *Estate of Wickes,* 139 Cal. 195, [72 Pac. 902], and counsel for appellant declared that to be substantially ''on all-fours'' with the case at bar and an authority supporting appellant's contentions. But that case differs in many essential particulars from this one. The superior court had decided against the contestant and this court sustained the judgment  The testatrix was an aged woman with no relatives. She was suffering from an

incurable disease, as was her husband. He was amply pro-
vided for and he, too, was without kindred. Dr. Shannon
had cared for the old lady for half a year, charging her
almost nothing, and he had been very kind to her "as much
so as a son." Under these circumstances she expressed a
wish to make a will in his favor and asked him to have a
testament prepared in harmony with her desire. He ac-
cordingly consulted with Judge Zenas N. Goldsby, who called
at the hospital where Mrs. Wickes was a patient. Dr. Pratt
accompanied the lawyer to the old lady's room, but Dr.
Shannon, the prospective beneficiary, remained outside dur-
ing all of the negotiations concerning the will. Before ex-
ecuting the instrument Mrs. Wickes was interrogated with
reference to her desires, and although a form of will had
been prepared in advance, it was not produced and read to
her until the attorney had satisfied himself that it really ex-
pressed her testamentary wishes.

From the brief outline of the facts in the *Estate of Wickes*
given above it will appear at once that there are several
points of difference between that case and the one at bar.
That was a contest between strangers to the blood both of
the testatrix and her husband; this is between the kindred of
Mrs. Nutt's deceased husband and a stranger. There was
no pretense in that case that Dr. Shannon had worked upon
the fears of the testatrix to convince her that she might
become destitute if she did not transfer her property to him.
And in that case the important element of the personal
presence of the trusted physician at the moment of the
testamentary act was not in existence as it is in this contest.
And the witnesses were entirely different in the two cases,
their credibility being a subject for different tribunals.
Mr. Justice Lorigan well expressed the rule regarding
credibility in the following words, in the opinion of the
*Estate of Wickes:* [4] "Whether evidence is sufficient to
sustain a will, must in all cases mainly depend on the
credibility of the witnesses by whom the testimony is of-
fered, and how far credibility should be given to their
testimony is to be determined by the judge who heard it.
That matter is solely committed to him, and his judgment
upon it is conclusive upon us."

Appellant takes the ground that the pleadings of the con-
testants were not sufficient to set forth a ground of contest

and that, therefore, no testimony should have been admitted over his objection. Respondents had set forth their contest in three counts. In the first was pleaded Dr. Simpson's undue influence over the mind of Mrs. Nutt by the domination of her mind over the weakened invalid toward whom she owed the greatest fairness by reason of her confidential relation to her patient. The second pleaded fraud by overreaching Mrs. Nutt by means of suppression; and the third averred fraud and undue influence accomplished by taking advantage of Mrs. Nutt's distress of mind. It is contended that domination and suppression are utterly incompatible. [5] On the contrary, they are sometimes handmaidens of fraud, working together. But appellant's counsel say that actionable suppression must be of *fact* or *facts*, and that Dr. Simpson, if she suppressed anything, only withheld her opinion that Mrs. Nutt would die soon. But the fact concealed was not only the belief of the physician that her patient would not and could not long survive, but the further fact that the progress of the disease as indicated by the symptoms justified only a prognosis of its early fatal termination.

Proponent's motion for nonsuit was properly overruled for reasons which must be apparent from the foregoing discussion of the essential parts of the evidence.

[6] There was no error in the court's refusal to give in the instructions a definition of the word "fact" offered by proponent. The court is not called upon to define simple words employed in instructions.

[7] The court declined to give an instruction to the effect that as matter of law proponent had a right to enter into a trust agreement with Mrs. Nutt. This was proper, because the proposed instruction contained merely the statement of a commonplace familiar to all, and, secondly, because this was a will contest, and not a proceeding or suit to invalidate a trust. True, the trust agreement was in evidence, but of that appellant may not well complain. He had made it a part of his answer to the contest.

[8] Another instruction refused by the court was to the effect that the quality of trust funds deposited by a trustee in his own name is not changed merely because he failed to place the designation "trustee" after his name. This

CLXXXI Cal.—34

instruction was not pertinent to the issues and was correctly refused.

[9] The court did not err in refusing to excuse the jury during the argument of the motion for a nonsuit. Whether the jurors should be excused or not was a matter entirely within the discretion of the court. In denying the motion the court, with most commendable care, instructed the jurors as follows: "I want to say to the jury that in denying this motion I am not deciding the case at all. It simply amounts to this: that if it was to stop right here I should leave it for the jury to determine on proper instructions after the argument of counsel."

The judgment is affirmed.

Wilbur, J., and Lennon, J., concurred.