[Civ. No. 14154. Second Dist., Div. Three. Apr. 27, 1944.]

Estate of ROY ELLIS KEIZUR, Deceased. LOLA NORMAN, Appellant, v. ARCHIE D. STEWART et al., Respondents.

Roland T. Williams for Appellant.

Archie D. Stewart, in pro. per., and E. P. Mulholland for Respondents.

SHINN, Acting P. J.—The appeal which is before us is from a judgment admitting to probate the will of Roy Ellis Keizur after a trial before the court of a contest before probate filed by Lola Norman, a sister of decedent, charging the exertion of undue influence by one of the beneficiaries in the procurement of the will, and denying its due execution by the testator and the subscribing witnesses. The principal contention of appellant is that the findings in favor of the executor and the beneficiaries upon these issues were not justified by the evidence.

Decedent was unmarried at the time of his death and left as his only heirs two brothers and two sisters. The sole beneficiaries of his will were three friends of decedent, Lowell Guest, his mother, Lida Guest, and Archie D. Stewart, who was then and for some time past had been acting as decedent's attorney. The estate consisted of real and personal property of the appraised value of $4,855.80. Testator was about fifty years of age and had acquired the estate in question shortly before his death, through the will of one Margaret Bartino. Respondent Stewart had acted as his attorney as executor of the Bartino estate and was acting in that capacity at the time he prepared decedent's will, which was executed in Stewart's office in the presence of two witnesses called in by Stewart, one, Dr. Gilbert, a dentist, whose office was in the same building, and the other, Mr. Burge, a public accountant who shared a reception room with Stewart and an adjoining private office.

Dr. Gilbert, as a witness upon the trial, had little recollection of the circumstances of the execution of the will. After he had stated that he, Mr. Stewart, and Mr. Burge were present with the testator when the will was signed, he testified: ''To the best of my knowledge Mr. Stewart said, 'These gentlemen will act as witnesses,' and I don't recall if there was anything else said unless Mr. Keizur in that conversation

remarked, 'All right,' or shook his head, or something.'' Mr. Burge testified that in the presence of the named parties, ''Mr. Stewart, as I recall, turned to Mr. Keizur and said something about, 'Is this your last will and testament?' And 'Do you want these gentlemen to witness your signature?' I don't know whether those were the exact words, but something to that effect. And he replied, 'Yes,' and he signed the document and Dr. Gilbert signed and then I signed, as witnesses.'' The trial court was fully justified in construing the answer of the testator to the questions asked as a request that those who signed the will as witnesses do so, and as a declaration that the document was his will. *(Estate of Offill* (1929), 96 Cal.App. 640 [274 P. 623].) Proof of the signing of the will by the testator and the witnesses raised a presumption of due execution. *(Estate of Braue* (1941), 45 Cal.App.2d 502 [114 P.2d 386].)

 In her attack upon the finding on the issue of undue influence, appellant's contention is that a confidential relationship existed between the testator and his attorney, Stewart, that the latter profited unduly by the will and participated in procuring its execution, that the burden was thereby cast upon respondents to show that the will was not induced by Stewart's influence, and that they failed to meet the presumption that it was so procured. We are of the opinion that the finding that no undue influence was used is supported by the evidence.

The undisputed evidence was that Mr. Stewart became acquainted with the testator early in August, 1941, and was employed at that time to act as testator's attorney in the administration of the estate of Margaret Bartino; that the testator called at his office about twice a week until September 24, 1941, the date of the will. The relations between the two were friendly and cordial but of a business and not social nature. Testator first spoke about his own will soon after the Bartino will was admitted to probate September 5, 1941. He told Mr. Stewart that Mr. and Mrs. Guest were friends, that they had helped him when he was ill and that he desired to remember them in his will. Mr. Stewart's wife had given birth to a baby girl and in giving instructions for the will the testator said that he would like to set up a little education fund for the benefit of the child, and when Mr. Stewart protested, testator insisted that he could do as he pleased with his money. The will was drawn in conformity with instruc-

tions given by the testator to his attorney. The attorney rendered small services aside from those in the administration of the Bartino estate and for these he was paid. The will was explained to the testator paragraph by paragraph and after its execution was delivered to a bank, where it remained until testator's death June 29, 1942, and it appears that the testator knew that the will was on deposit with the bank. There were no business, professional, nor even social relations between Mr. Stewart and Mr. and Mrs. Guest, and Mr. Stewart did not discuss with Mr. or Mrs. Guest the matter of the will until after testator's death. There was no evidence that Mr. Stewart ever advised testator to make a will or that he made any suggestion as to what the testator should. do with his estate. The circumstances under which the will was executed were disclosed by the evidence and nothing appeared therein to indicate that testator did not fully understand what he was doing or that the will was not his voluntary act. An important fact tending to disprove the allegation that the testator acted under the domination of Mr. Stewart is that the latter took only one-third of the estate, while the other two-thirds went to those who were friends of the testator but mere acquaintances of Mr. Stewart. The testator would appear to have been the author of this plan of the will.

The foregoing facts were established by uncontradicted evidence. There was testimony on behalf of contestant that the testator had expressed dissatisfaction with the will to friends with whom he discussed it, and stated that he intended to change it; that he stated he had believed Lowell Guest to be his friend and had found out that he was not, and that in numerous conversations about his will he did not mention the fact that Stewart was one of the beneficiaries. ▉ We may assume for the purposes of this opinion that the case was one which called for the application of the established rule that where one who unduly profits by the will as a beneficiary thereunder sustains a confidential relation to the testator and has actually participated in procuring the execution of the will, the burden is on him to show that the will was not induced by coercion or fraud. (*Estate of Baird* (1917), 176 Cal. 381, 384 [168 P. 561].) Under this rule it was incumbent upon respondents to produce evidence that no undue influence was used in procuring the will. ▉ The presumption upon which contestant relied was not supported

by the testimony of any witness nor the circumstances in evidence. Nothing more was shown than that Stewart had an opportunity to influence the making of the will. Against this was the testimony of Stewart that he made no suggestions and gave no advice with reference to the terms of the will. The trial court accepted his testimony and, believing it, was obliged to conclude that the testator acted voluntarily.

The decision was one of fact based upon conflicting evidence. Contestant's case at most was a prima facie one, and the finding of the trial court, upon sufficient evidence, that the facts were contrary to the presumption is conclusive upon appeal. (*Estate of Wickes* (1903), 139 Cal. 195 [72 P. 902].) A question of law would be presented if appellant contended that there was no substantial evidence to support the finding, but that contention is not made except as a mere assertion. No mention is made of the testimony of Mr. Stewart upon the vital issue of the actual use of undue influence, and yet the argument appears to be that the court should not have believed the testimony of respondents' witnesses, and is addressed to a question of fact, not of law.

We think the court did not err in overruling objections to questions propounded to one of the subscribing witnesses as to the circumstances under which the will was executed and in denying motions to strike out certain of the answers upon the ground that they were not responsive to the questions and upon other grounds.

The judgment is affirmed.

Wood (Parker), J., and Bishop, J. pro tem., concurred.