[Civ. No. 7438. Third Dist. June 10, 1948.]

Estate of MARTHA ELIZABETH TREFREN,· Deceased. EVERETT T. TREFREN, Respondent, v. DEE SPANN, Appellant.

Busick & Busick for Appellant.

Ralph McGee, G. G. Chisholm and Russell A. Harris for Respondent.

SCHOTTKY, J. pro tem.—Dee Spann, sole legatee under the alleged will of Martha Elizabeth Trefren, appeals from a judgment denying probate to said will based upon findings of the jury (1) that said Martha Elizabeth Trefren was not of sound and disposing mind at the time said will was executed, and (2) that she was induced to sign said will by means of undue influence. Upon this appeal proponent contends that there is not sufficient evidence to sustain either of said findings and also that the trial court erred in the admission over appellant's objection of certain testimony.

 In reviewing the sufficiency of the evidence in an action involving a will contest, the test to be applied by an appellate court is the same as that which applies on other appeals, namely, whether or not there is any substantial evidence to support the findings of the jury or trial court. All questions of the weight of the evidence and the credibility of the witnesses are for the jury and the trial court, and if there is any substantial evidence to support the verdict or finding it cannot be set aside by the reviewing court, although said court may believe the great preponderance of the evidence was the other way. (See *In re Pessagno's Estate*, 58 Cal.App.2d 390 [136 P.2d 644]; *Estate of Downey*, 51 Cal. App.2d 275 [124 P.2d 637]; *Estate of Hansen*, 38 Cal.App.2d 99 [100 P.2d 776]; *Estate of Miller*, 16 Cal.App.2d 141 [60

P.2d 492].) As in other cases involving the sufficiency of the evidence to sustain a verdict or finding, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion of the trier of the facts. ■ All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial judge or jury. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]; *Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384].)

As was said in the *Estate of Teel, supra,* at page 527:

"All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed."

Bearing the foregoing principles of law in mind, we shall summarize briefly the factual situation as shown by the record, stating the facts in a light most favorable to respondent, disregarding any conflicts in the evidence and giving full credit only to that portion of the evidence which tends to support the judgment denying probate of the will.

The decedent, Martha Elizabeth Trefren, referred to in the transcript as "Pat," and her husband, Everett Trefren, were married in 1935 and lived together as husband and wife for a period of 10 years prior to her death. They had no family difficulty according to at least two witnesses other than Mr. Trefern. They resided in their own home in Plymouth, and on September 29, 1945, Mrs Trefren became quite ill and was taken by her husband to a hospital in Placerville. On the way to the hospital the decedent at that time stated to her husband that if anything should happen to her, she wanted Arlene Spann to have her personal belongings, and that the rest should go to her husband, the contestant. She said the same thing the night before she was operated on, the date of her operation being October 15, 1945. Prior to her illness she had stated that Arlene Spann had tried to get her to make a will leaving her property to her son. On these occasions the decedent had stated that Arlene was "money mad" and that her husband should keep what he had earned and worked for.

Following the operation she was in considerable pain up to the time of her death and was under hypnotic drugs or sedatives much of the time. Several witnesses testified that she was often irrational, that her mind seemed to wander off, that she did not recognize her husband or friends at times, that she read very little if at all, and that at times she was delirious. The decedent while at the hospital was very weak and in poor physical condition. The will in question was executed on October 22, 1945, one week after the operation, and decedent died in the hospital on November 10, 1945, having been confined to her bed there from the time of her entry on September 29th.

The will, which was drawn in Crescent City by an uncle of Mrs. Spann, wife of proponent, in accordance with Mrs. Spann's instructions, left all of decedent's estate, which consisted of her half of the community property of herself and contestant, to the proponent, appellant Dee Spann, a son of decedent by a former marriage. Appellant and his wife made a trip from Crescent City to Placerville to see decedent and stayed four or five days, and Mrs. Spann testified that it was during that visit that decedent asked her to have the will prepared. Appellant and his wife returned to Placerville about October 19th, bringing with them the will which had been drawn in Crescent City between the first and second trips. Appellant and Mrs. Spann visited decedent daily between the 19th and the 22d, the date of the execution of the will, but said nothing to decedent about the will until just before it was executed on October 22d. The will was witnessed by Mrs. Spann and a nurse, no one else being present, the nurse being called into the room by Mrs. Spann. Just prior to decedent's operation she was asked by her husband if she desired to make a will and she said that she did not. After his wife's death, Mr. Trefern gave Arlene Spann the decedent's personal belongings, including a sewing machine, in accordance with her expressed wishes. The husband knew nothing of the will until after her death although he visited the decedent every day during her confinement in the hospital. At times she could not form a complete question, told her husband that she was unable to read, and he read to her. Additional facts shown by the record will be hereinafter set forth.

The jury returned a verdict finding that at the time of executing the will the testatrix was of unsound mind, and that she was induced to sign the will by means of undue influence.

The trial court denied a motion for judgment notwithstanding the verdict and entered judgment denying probate.

Appellant has assigned as error three instances in which testimony on behalf of contestant was admitted over his objection. The first of these relates to questions asked of contestant relating to the married life of contestant and testatrix in rebuttal of evidence of appellant that there was marital discord; the second relates to gifts and financial assistance by testatrix and contestant to appellant; and the third relates to statements made by deceased to contestant and others concerning her wishes in respect to the disposition of her property interests upon death.

Appellant has cited no authority in support of his first two assignments of error, and we are satisfied that there was no error in the admission of this testimony. ■ The relations between the testatrix and the members of her family have a bearing upon the state of mind of the testatrix, and are both material and relevant for that purpose.

■■ Appellant's remaining assignment of error concerning the admission of testimony relates to the overruling of objections to testimony of the contestant and also to the witness Gertrude McCulloch as to declarations made by the testatrix to the effect that she thought that the contestant, her husband, should in the event of her death have what they had accumulated, apart from her personal effects which she stated that she desired to go to Arlene Spann, and further declarations that Arlene Spann wanted her to leave her part of their property to appellant, Arlene Spann's husband, the son of testatrix by a prior marriage. Some of the declarations were made when the testatrix was suffering what proved to be her last illness, and within several days prior to the execution of the contested will. The other statements were made prior to that time but within six months prior thereto.

The rule with reference to the admissibility of such declarations is well expressed in *Estate of Snowball*, 157 Cal. 301 [107 P. 598], in which case the court considered the admissibility of statements made 10 months before the execution of the will to the effect that she would leave her property to certain persons in certain amounts. Said the court at page 308:

"The rule in this state in regard to the admissibility of such declarations, when not so made as to constitute a part of the *res gestae,* is clearly established by the decisions. They

are not admissible in proof or disproof of any statement of fact contained in them, or for the purpose of showing the exercise of undue influence. But wherever the condition or state of mind of the declarant is a material matter, declarations of the testator legitimately tending to shed light on that question are admissible solely for that purpose, that is for the purpose of showing his then condition or state of mind, the effect being, as was said in *Estate of Arnold,* 147 Cal. 594 [82 P. 256], 'carefully limited to the question of his condition of mind.' The most common case in which such declarations are admissible is, of course, the case where the question is as to the mental capacity of the testator to make a will. But the authorities recognize that, as is obvious, the condition or state of mind of the testator at times preceding the execution of the will is a material matter where the issue is undue influence, not for the purpose of showing the exercise of undue influence by another, which cannot be so shown, but for the purpose of showing the effect of undue influence proved by other evidence. As is said in the case last cited, there is a distinction between the effect of such declarations to prove the undue influence and fraud, and their effect to prove the state of mind of the testator. What was said in *Estate of Arnold,* 147 Cal. 594 [82 P. 256], was said with reference to the issue of undue influence, and in the later case of *Estate of Thomas,* 155 Cal. 488 [101 P. 798], it was said that in cases involving the question of the testator's sanity or the issue of undue influence the underlying principle was the same with respect to such declarations, the declarations being admitted not in proof or disproof of any statement of fact contained in them, but as tending to show the condition or state of mind of the declarant, this condition or state of mind having a direct and important bearing upon the disputed question of his mental capacity or the execution of the will under undue influence." See, also, *Estate of Ricks,* 160 Cal. 467 [117 P. 539] ; *Estate of Allen,* 177 Cal. 668 [171 P. 686].

In the instant case the trial court instructed the jury as follows :

"You are instructed that the evidence of declarations made by Martha Elizabeth Trefren was admitted for the sole purpose of showing the friendliness or unfriendliness existing between the said Martha Elizabeth Trefren and her husband, Everett T. Trefren, and her son, Dee Spann, and for the purpose of showing the state of mind of the said Martha Eliza-

beth Trefren and the mental attitude of the said Martha Elizabeth Trefren toward the various objects of her bounty and are to be considered by you only for that purpose.''

We shall next discuss the contention of appellant that there is no substantial evidence to support the finding of the jury that Mrs. Trefren was induced to sign the will by means of undue influence. Appellant argues that the very most that the evidence shows is that Mrs. Spann made suggestions that her husband, Dee Spann, should be made the beneficiary, but that there is an absence of any evidence that Mrs. Spann, through the force of her personality or because of any confidential relationship, persuaded Mrs. Trefren to make a will which was contrary to her wishes. Appellant argues further that contestant failed to show that Mrs. Spann exerted any pressure to overpower the mind and bear down upon the volition of the testatrix at the very time the will was executed.

There can be no doubt that the general rule, established by numerous authorities, is as stated in *Estate of Easton,* 140 Cal.App. 367 [35 P.2d 614], from which case appellant quotes at page 370:

"The legal principles to be used in determining whether a will is the product of undue influence are well settled by a continuous line of decisions. They are set forth in the *Estate of Morcel,* 162 Cal. 188 [121 P. 733], *Estate of Bryson,* 191 Cal. 521 [217 P. 525], *Estate of Perkins,* 195 Cal. 699 [235 P. 45], and several later cases hereinafter cited. As pointed out therein, the kind of influence that may be held to be undue influence warranting a repudiation of a will 'must be such as in effect destroyed the testator's free agency, and substituted for his own another person's will' (*Estate of Motz,* 136 Cal. 558, 563 [69 P. 294]); and mere general influence, however strong or controlling, not brought to bear on the testamentary act, is not enough; it must be influence used directly to procure the will, and must amount 'to coercion destroying free agency on the part of the testator' (*Estate of Keegan,* 139 Cal. 123, 127 [72 P. 828]; *Estate of Fleming,* 199 Cal. 750 [251 P. 637]; *Estate of Holloway,* 195 Cal. 711 [235 P. 1012]). So, also, proof of mere opportunity to influence the mind of the testatrix, even though coupled with an interest or with a motive so to do, is insufficient. In order to warrant setting aside a will on this ground there must be substantial proof, direct or circumstantial, of a pressure which overpowers the volition of the testator and operates directly on the testamentary act.''

Appellant also quotes the following language from *Estate of Gleason,* 164 Cal. 756, 765 [130 P. 872]:

"The unbroken rule in this state is that the courts must refuse to set aside the solemnly executed will of a deceased person upon the ground of undue influence unless there be proof of 'a pressure which overpowered the mind and bore down the volition of the testator at the very time the will was made.' (*Estate of Carithers,* 156 Cal. 428 [105 P. 130]; *Estate of Lavinburg,* 161 Cal. 543 [119 P. 915]; *Estate of Kilborn,* 162 Cal. 11 [120 P. 762].)"

Respondent in reply invokes the rule set forth in *Estate of Lances,* 216 Cal. 397 [14 P.2d 768], where the court said at pages 403-404:

"Where one who unduly profits by a will sustains a confidential relationship to the testator and actively participates in procuring the execution of the will, the burden is upon him to show that the will was not induced by his undue influence. (*Estate of Shay,* 196 Cal. 355, 363 [237 P. 1079]; *Estate of Gallo,* 61 Cal.App. 163 [214 P. 496].) This is but another way of saying that upon the concurrence of the elements just mentioned, a presumption of undue influence has arisen which must be overcome by the proponent. Whether it was overcome was a question, in the first instance, for the jury to determine."

Respondent argues that it appears from the evidence (1) that the sole beneficiary under the will was appellant, a son by a former marriage, the husband of testatrix through whose labor the estate of testatrix was earned being left no part of the estate and not even being mentioned in the will; (2) that Arlene Spann, the wife of the sole beneficiary, who had known testatrix intimately for 20 years, and who testified that she and deceased were "just like sisters," was active in the preparation of, and in obtaining the execution of the will at a time when testatrix was upon her deathbed and extremely weak physically.

There can be no doubt that a confidential relationship existed between Arlene Spann and testatrix nor can there be any doubt that Arlene Spann was active in both the preparation and execution of the will. Appellant makes little effort to dispute this. It also appears from the record that appellant was aware of the activity of his wife, Arlene Spann, before the will was drawn in Crescent City and that he knew that it was the plan to have the will executed by testatrix.

We believe that both reason and authority support the proposition that where a wife is active in obtaining the preparation and execution of a will making her husband the sole beneficiary, the activity of the wife is imputed to the husband. In *Estate of Nutt,* 181 Cal. 522 [185 P. 393], the court said at page 526:

"Respondents rely upon the rule that if a confidential relation between the testatrix and the beneficiary appear, coupled with activity of the latter in the preparation of the will, a presumption of undue influence arises and the burden is on the beneficiary to show that the testament was not procured by undue influence (citing *Estate of Baird,* 176 Cal. 381 [168 P. 561]), and the rule that any undue influence exercised by Dr. Simpson would be imputed to appellant (citing *Ross* v. *Conway,* 92 Cal. 632-637 [28 P. 785])."

And in II Alexander on Wills, at page 899, it is stated: "It has been held that the presumption of undue influence arising from a bequest from a ward to a guardian extends to the wife of the guardian."

In *Bridwell* v. *Swank,* 84 Mo. 455, the court held that a bequest to the wife of the guardian is within the operation of the rule imposing upon him and his wife the burden of repelling the presumption of undue influence, where it appears that the guardian may expect and derive substantial advantage and benefit from such will of his ward, saying, "the next best thing, after a bequest to one's self, is a bequest to his wife. Indeed, in many instances, the latter may be regarded as the safer and preferable one."

See, also, *Estate of Miller,* 16 Cal.App.2d 154 [60 P.2d 498], where the court said at pages 166-167:

"The proper inference to be deduced from the testimony is that the acts of the attorney who drew the will, being the attorney for the appellant, are imputable and chargeable to appellant. (*Estate of Nutt,* 181 Cal. 522 [185 P. 393].)"

We shall next consider the question of whether or not appellant and his wife unduly profited by the will. The natural objects of one's bounty are his descendants, surviving spouse and parents who by reason of such relationship may be assumed to have claims upon his bounty. (26 Cal.Jur. p. 695; *Estate of Easton, supra,* p. 377; *Estate of Jacobs,* 24 Cal.App.2d 649 [76 P.2d 128].

In *Estate of Teel, supra,* the will of testatrix left her entire estate to her husband to the exclusion of her only daughter. In sustaining a finding of undue influence our Supreme Court

referred to the will as unnatural in the following quotation from page 528:

"A fiduciary relationship exists between husband and wife in respect to the issue of undue influence in a will contest, and where such fiduciary relationship is combined with unduly profiting by the will, and its being unnatural, and activity on the part of the proponent in procuring its execution, we have persuasive evidence of undue influence. [Citing cases.]"

And in *Estate of Lances, supra,* the testator was an unmarried Indian whose only relative was the contestant who claimed to be an uncle. He left his entire estate to proponent, a neighbor with whom he had been on friendly terms for 20 years. Proponent prepared the will and it was read to testator in the presence of the subscribing witnesses, and testator stated that that was the way he wanted it. The trial court, relying on earlier decisions, held that there was no substantial evidence of undue influence and directed a verdict in favor of proponent. Upon appeal the judgment was reversed, our Supreme Court holding that there was a presumption of undue influence and that it was for the jury to determine whether such presumption was overcome. The court said at page 403:

"There is next brought home to the proponent an uncontradicted showing that he unduly profited by the terms of the will. He was to receive the whole of the estate, representing a very substantial amount and to the prejudice of the heirs of the decedent."

As already pointed out in the instant case, the estate of testatrix consisted almost entirely of property which had been accumulated by respondent and herself during their 10 years of married life. Several witnesses testified that she had stated that she did not desire to make a will as she wanted her husband to have what they had as he had earned it. Appellant's wife, with his knowledge and cooperation, had a will prepared which left no part of the property that testatrix was entitled to devise and bequeath to respondent, and had said will executed by the testatrix. If there had been no will respondent would have received all of said property and appellant none. Under such circumstances we do not believe that it can be held that there is no evidence in the record from which a jury would be justified in concluding that appellant and his wife unduly profited by the will. As we have hereinbefore pointed out, there is in the record substantial

evidence upon which the jury could conclude: (1) that a confidential relationship existed between appellant and his wife and the testatrix; (2) that appellant and his wife were active in the preparation and execution of the will; and (3) that appellant and his wife unduly profited by the will. This placed upon appellant the burden of showing that the will was not induced by undue influence, and it was for the jury to determine in the first instance whether or not the presumption of undue influence which arose had been overcome by appellant.

Appellant makes an able and earnest argument in an effort to prove his contention that the record does not sustain a finding of undue influence. If the verdict of the jury had been in favor of appellant, his argument would be very helpful in pointing out evidence in support of such verdict, but in the face of the adverse verdict of the jury upon this issue the testimony pointed out and relied upon by appellant merely accentuates the conflict in the testimony, and, as hereinbefore pointed out, it was the province of the jury to weigh the evidence. Therefore, we deem it unnecessary to discuss at length the argument of appellant as to the insufficiency of the evidence. However, the jury may well have concluded that there was sufficient evidence to justify a presumption or inference of undue influence, and having so concluded it was for the jury to determine whether such presumption or inference was overcome by appellant. In the instant case there are various circumstances which support the conclusion reached. The testatrix was in a weakened physical and mental condition due to the illness and operation which resulted in her death, and the mental and physical condition of the testatrix are factors to be considered on the issue of undue influence. (*Estate of Teel, supra,* p. 527.) Arlene Spann testified that testatrix asked her to have a will prepared leaving all of her property to appellant. To her husband, respondent, and others the testatrix had expressed a different intention. Arlene Spann did not send an attorney from Placerville, where testatrix was in the hospital, to talk with testatrix and draw her will, but she went home to far-off Crescent City and there had her uncle, with whom testatrix had no opportunity to talk, draw the will. This last circumstance is very significant, for, as stated by the court in *Estate of Hartley,* 137 Cal.App. 630, at 634 [31 P.2d 240]: "The preparation of the will by a lawyer who obtained all his knowledge from Wagner [the beneficiary] and was neither requested to consult nor given opportunity

of adequate conference with the testatrix speaks volumes against the good faith of Wagner. (*Estate of Nutt,* 181 Cal. 522, 527 [185 P. 393].)'' The will itself consisted of four lines, left the entire estate to appellant, and did not mention respondent husband. Appellant and Arlene Spann brought the will back to Placerville and it was not until several days thereafter that the will was executed, although they saw the testatrix every day. At the time of the execution of the will Arlene Spann called a nurse into testatrix's hospital room to witness it, no one else being present. It is fairly inferable from the record that Arlene Spann sought a time when no one else was present for the execution of the will. After the execution of the will neither appellant nor Arlene Spann told anyone that the will had been executed, and respondent knew nothing about it until after it had been filed for probate. All of these circumstances, combined with the other facts and circumstances appearing in the record, are sufficient to support the verdict of the jury on the issue of undue influence.

The following language from *Estate of Graves,* 202 Cal. 258 [259 P. 935], at page 262, is quite applicable to the instant case:

''Three well-established facts, among others, which are recognized as being indicative of undue influence, or a subversion of a decedent's volition, stand out clearly in the record: The relations between appellant and the decedent afforded to appellant an opportunity to control the testamentary act; the decedent's condition was such as to permit of a subversion of her freedom of will; the appellant was active in procuring the instrument to be executed. In addition, appellant unduly profited as beneficiary under the will. While none of these circumstances, standing alone, has the effect of creating a presumption against the validity of the instrument, their probative force, in combination, is to impose upon the proponent the obligation of presenting evidence of volition, and to make the question as to undue influence one of fact for the jury's determination. (26 Cal.Jur., pp. 647, 648.) Appellant correctly contends that mere proof of opportunity to influence the mind of the testatrix, even though shown to be coupled with interest, or a motive to do so, does not sustain a finding of undue influence, in the absence of testimony showing that there was pressure operating directly on her testamentary act. (*Estate of Morcel,* 162 Cal. 188, 194 [121 P. 733].) But in

this case it clearly appears that the appellant took an active part in securing the execution of the will at a time when there existed a confidential relation between himself and Mrs. Graves. The rule is well settled that ' "where one who unduly profits by the will as a beneficiary thereunder sustains a confidential relation to the testator,. and has actually participated in procuring the execution of the will, the burden is on him to show that the will was not induced by coercion or fraud.'' (*Estate of Baird,* 176 Cal. 381, 384 [168 P. 561] ; *Estate of Nutt,* 181 Cal. 522, 528 [185 P. 393]), and that "a presumption of undue influence arises from proof of the existence of a confidential relation between the testator and such a beneficiary, coupled with activity on the part of the latter in the preparation of the will.'' (*Estate of Higgins,* 156 Cal. 261 [104 P. 6].)' (*Estate of Relph,* 192 Cal. 451, 465 [221 P. 361].) Appellant did not sustain the burden cast upon him in the lower court, and has not satisfied us that the finding of the jury, and the consequent judgment revoking the will, are incorrect as matters of law. In view of the surroundings in which the testatrix was placed, prior to and after making the will, we deem of little moment the fact that she lived about two months after its execution.''

We conclude, therefore, that the finding of the jury that testatrix was induced to sign the will by means of undue influence finds ample support in the record.

In view of our conclusion that the will was properly denied probate on the ground of undue influence, we deem it unnecessary to prolong this opinion by discussing the contention of appellant that the evidence was insufficient to sustain the jury's finding that testatrix was not of sound and disposing mind. It may be conceded that the evidence in support of that finding is not so strong as that in support of the finding of undue influence, but it would serve no useful purpose to enter upon a detailed discussion of that issue.

In view of the foregoing the motion of appellant for a judgment notwithstanding the verdict was properly denied by the trial court, and the judgment should be and is hereby affirmed.

Adams, P. J., and Thompson, J., concurred.