[No. 12911. In Bank. — June 1, 1889.]

IN THE MATTER OF THE ESTATE OF CHARLES W. CARPENTER, DECEASED. ABEL FRANK CARPENTER ET AL., RESPONDENTS, v. C. K. BAILEY ET AL., APPELLANTS.

CONTEST OF WILL — MENTAL INCOMPETENCY — EVIDENCE — OPINIONS OF WITNESSES — DISCRETION AS TO PROOF OF INTIMACY. — Upon the trial of a contest of a will which is determined upon an issue as to the testamentary capacity of the deceased, it is not error to admit the opinion of a witness as to the mental sanity of the deceased, when there is considerable evidence to the point of his intimacy, although the showing of intimacy may not be very strong. The determination of the question of intimacy, where such evidence is admitted, is in the discretion of the court. But there is a distinction between the admission and the rejection of such evidence, and it is error for the court to refuse to allow the opinion of the witness as to the mental sanity of the deceased to be given, when the showing of intimacy is sufficient.

ID. — EVIDENCE AS TO CHANGE OF MENTAL CONDITION. — It is error, upon such trial, to refuse to allow a witness to testify whether or not there had been any change in the mental condition or capacity of the deceased, provided the witness was asked for facts about the change, and not for a conclusion. A marked change in a man's habits of thought is strong evidence of mental unsoundness, and the absence of such change is evidence of the contrary.

ID. — INSTRUCTIONS — PROVINCE OF JURY. — Upon the trial of an issue as to the mental competency of a testator, it is for the jury to say whether the will of a bachelor giving his property to the children of his business partner, instead of to his brothers and their children in the Eastern states, was unnatural; and an instruction characterizing such will as unnatural is improper and prejudicial.

APPEAL from an order of the Superior Court of San Joaquin County denying a new trial.

The facts are stated in the opinion of the court. The newly discovered evidence referred to in the opinion consisted of affidavits that the deceased had been ill treated and abused by his father, and did not care for any of his relatives except his mother and sister; that his brothers were sullen and quarrelsome in disposition; and that there was bad feeling between them and the deceased.

*Carter, Smith & Keniston,* and *S.* '*D. Woods,* for Appellants.

The court erred in admitting the testimony of plaintiffs' witnesses as to their opinions of the mental incompetency of deceased, without sufficient proof of intimacy, and in excluding the testimony of Weaver, whose proof of intimate acquaintance with the deceased was sufficient. The question to the witness Montgomery as to what change, if any, he saw in the mental condition or mental capacity of deceased from the time he became intimately acquainted with him until some eight or ten days before his death should have been allowed. (Griesinge's Mental Pathology, 80; Browne's Medical Jurisprudence of Insanity, 602.)

*Sawyer & Burnett,* and *Amos H. Carpenter,* for Respondents.

The ruling of the court as to the sufficiency of proof of intimacy of Hurlburt with deceased was matter of discretion. (*People* v. *Pico,* 62 Cal. 53; *People* v. *Levy,* 71 Cal. 618; *People* v. *Fine,* 77 Cal. 147.) An unnatural will imposes the burden of proof on those claiming under it to show that it was not the offspring of mental obliquity. (1 Redfield on Wills, 515.) The admission or rejection of preliminary evidence as to the qualification of a witness to give an opinion rests solely in the discretion of the trial court. The court is not bound to believe what the witness swears to. (*Jones* v. *Tucker,* 41 N. H. 546, and cases cited; *Nelson* v. *Sun Ins. Co.,* 71 N. Y. 453; *People* v. *Pico,* 62 Cal. 53; *People* v. *Levy,* '71 Cal. 618.) A will may on its face carry evidence of an unsound mind. (*Clark* v. *Fisher,* 1 Paige, 171; 19 Am. Dec. 402; *Higgins* v. *Carlton,* 28 Md. 115; 92 Am. Dec. 666; 1 Redfield on Wills, p. 515; *Kirkwood* v. *Gordon,* 7 Rich. 474; 62 Am. Dec. 421; *Addington* v. *Wilson,* 5 Ind. 132; 61 Am. Dec. 81; *Tomkins* v. *Tomkins,* 1 Bail. 92; 19 Am. Dec. 656.)

McFarland, J.—This is a contest over the will of Charles W. Carpenter, deceased. Special issues were submitted to a jury, who found that the will was not procured to be made through fraud exercised by any one, and was not procured to be made in the form in which it was made through undue influence exercised by any one, and was executed and attested according to law; but the jury also found that the deceased, at the time of the execution of the will, was "of unsound mind," was "incompetent to make a will," and did not have "sufficient mental capacity to comprehend fully," etc. Thereupon the court entered an order revoking the will (which had previously been admitted to probate). The proponents, executor of the will, and devisees and legatees, appeal from said order, and also from an order denying a new trial.

The issue upon which the contest was determined was the testamentary capacity of the deceased. Some witnesses were examined on both sides as to their opinions of the mental sanity of the deceased, on the ground that they were intimate acquaintances, within the meaning of subdivision 10 of section 1870 of the Code of Civil Procedure; and it could not be correctly said that, outside of those opinions, there was sufficient evidence to justify the finding of the jury. The principal witness on that point for the contestants was George M. Hurlburt; and he was, indeed, about the only witness on that side who expressed a positive opinion that the deceased was insane or of unsound mind. Appellants contend very strenuously that there was no sufficient showing of Hurlburt's intimacy with the deceased, under the section of the code above mentioned, to warrant the court in allowing him to give his opinion. While the showing of intimacy was not very strong, still there was considerable evidence to that point; and we cannot hold that the court erred in admitting the testimony. But we are satisfied that the court *did* err in refusing to allow the

witness of the appellants, H. W. Weaver, to give his
opinion of the mental sanity of the deceased. The evi-
dence of his intimacy with the deceased was much
stronger than that of the intimacy of Hurlburt; and
the two rulings were inconsistent. The preliminary
testimony of Weaver was as follows:—

"I live in Stockton; have lived here sixteen years. I
know C. K. Bailey, and I knew Carpenter in his lifetime.
I became acquainted with Carpenter in 1875. I became
intimately acquainted with him about 1877. From 1880
to the time of his death I conversed with him quite
frequently. I met him in the city of Stockton, and on
Bailey and Carpenter's ranches. I know three ranches,
— the home ranch, the ranch on the plains, and the ranch
in the mountains. I never saw him on the plains ranch.
I met him on the home ranch twice, — once in 1879 and
and once in 1881. In 1879 I saw him a few minutes; I
stopped a few minutes; I was on business. In 1881 it
was about the same. I stopped there as I was passing
by; stopped there and saw him; I saw him but a few
moments at the mountain ranch; it was in 1882 or 1883.
I was there two or three days. I had two or three con-
versations with him at that time. He was shearing
sheep, and we had some conversation about shearing,—
about the condition of his sheep. Then one evening he
came up to our camp, and we had a general conversation
with him; conversed on general subjects. I met him in
my office in Stockton quite frequently, and conversed
with him generally on business matters. I saw him
twice during his last sickness; the first time I talked
with him five or ten minutes; the second time I asked
him how he was; that was about all the conversation I
had with him. I met him in Sacramento; he was a wit-
ness there in a case in which I was an attorney; the case
never came to trial. I examined him in regard to what
the nature of his testimony would be; examined him on
what his knowledge of the case would be. I met him a

dozen or fifteen times in my office; once at the ranch in the mountains; twice on the ranch. I also met him frequently, a half a dozen times, on the streets of Stockton and talked to him. I met him once at the house of Mr. Schmidt, and conversed with him. I always stopped and talked with him when I met him on the street. I talked to him ten or fifteen minutes when he was shearing sheep. I never was at his place where he lived except in the mountains. I never was at his abode, you may say, except in the mountains at one time."

The witness, having then said that he had an opinion as to the mental condition of the deceased, was asked to state that opinion and the reasons for it. Respondents objected, because sufficient intimacy had not been shown; the court sustained the objection, and appellants excepted.

In *People* v. *Pico*, 62 Cal. 53, *People* v. *Levy*, 71 Cal. 623, and *People* v. *Fine*, 77 Cal. 147, it was said that the determination of the question whether a witness was an acquaintance, within the meaning of the code, was addressed to the discretion of the court below, and that "there being no abuse" of the discretion, the appellate court would not interfere. But in all those cases the evidence had been *admitted;* and the language used was not in a case where, after a sufficient showing of the statutory qualification, the testimony of the witness had been *rejected.* The distinction between those cases and the one at bar is obvious. A jury in determining the doubtful and delicate question of a man's sanity, not having had the opportunity of personal observation, should have the benefit of everything offered within the range of legal evidence. It was said in the case of the *Estate of Toomes*, 54 Cal. 509, that "whatever may be the rule as to the admission of improper testimony, the exclusion of proper testimony is *always* ground for reversal." Perhaps that is too strong a statement of the rule; but it is certainly true that the exclusion of proper

testimony, which is evidently material and important, and might probably have changed the result, is a ground for reversal. And we are satisfied that the offered testimony of Weaver was proper, and also that in the state of the evidence it was in a high degree material and important. For this error, therefore, the judgment must be reversed and a new trial granted.

We will not undertake to discuss all the other points made in the case, but will notice one or two.

1. We think that the instruction No. 27, given at the request of the respondents, had better be omitted or greatly modified. If a man, by his will, should disinherit his wife or children, or perhaps other near relations with whom he was intimate, and for whom he had shown great affection, the will would perhaps by common consent, and may be in law, be called "unnatural." But in the case at bar the testator was a bachelor, and had neither father nor mother living; he had left his early home in Vermont in 1849 when only twenty years old, and had spent nearly all his life in California; during that time he had but little, if any, intercourse with his collateral kin in the Eastern states; and under these circumstances it was for the jury to say if the willing of his property to the children of his business partner here instead of his brothers and their children in the Eastern states was unnatural. The use of the word "unnatural" in the instruction was, we think, improper and prejudicial.

2. We think, also, that the court erred in refusing to allow the witness Montgomery to testify whether or not there had been any *change* in the mental condition or capacity of the deceased, provided the witness was asked for facts about the change, and not for a conclusion. A marked change in a man's habits of thought is strong evidence of his mental unsoundness, and the absence of such change is evidence of the contrary.

3. The affidavits presented by appellants make a strong case for a new trial, upon the ground of newly

discovered evidence; but if that were the only ground for a new trial, we would not feel warranted in holding that the court erred in denying it.

4. The instructions asked by the parties and given or refused number over eighty, and, with the instructions given by the court of its own motion, cover about fifty pages of the transcript. We have not observed any material errors, except as above noticed, but as the case is reversed on other points, we have not undertaken to critically examine the whole mass of instructions given and refused, and this opinion must not be taken as a determination of the correctness of the rulings of the court in the matter of instructions. It is to be hoped that if there shall be another trial of the case counsel may be able, in asking instructions, to put their views of the law with reasonable brevity and in a digestible form.

Orders appealed from reversed, and new trial granted.

THORNTON, J., BEATTY, C. J., WORKS, J., and SHARPSTEIN, J., concurred.

PATERSON, J., did not participate in the decision of this cause.

Rehearing denied.