[Civ. No. 9416. First Appellate District, Division One.—March 31, 1934.]

In the Matter of the Estate of JENNIE E. HARTLEY, Deceased. DOLLIE BACON et al., Respondents, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Keyes & Erskine, Edmund Scott and William A. White for Appellant.

Treat & Ogden and Barrett & Barrett for Respondents.

THE COURT.—Respondents filed a contest to the will of Jennie E. Hartley. The contest was based upon three grounds: 1. Incompetency of Jennie E. Hartley; 2. Lack of due execution; and 3. Undue influence of Carl E. Wagner. The trial was had before a jury. After respondents had rested their case appellant moved for a nonsuit on all of said grounds and same was denied. Thereupon the trial continued and the jury returned a verdict that the testatrix was of unsound mind at the time she executed the will; that the said will was not executed in the manner and form required by law and that it was procured under the undue influence of Carl E. Wagner. Upon this verdict judgment was rendered in favor of respondents and thereupon appellant moved for a new trial, and same being denied it prosecutes this appeal.

Appellant contends that the evidence is not sufficient to support the verdict. The evidence produced by respondents was substantially as follows: They were the next of kin and heirs at law of decedent; they were her first cousins; two of them, Dollie and Birdie Bacon, had lived with her since 1907; that the alleged will was executed on July 3, 1928; that the testatrix at that date was eighty years of age; that she had been a resident of Redwood City for many years; that she had been a school-teacher, had taught in that city and for a time was assistant super-

intendent of schools in San Mateo County; that during all of this time she was a dignified, refined and intelligent woman, very decorous in her conduct. Beginning in 1919, and continuing thereafter until her death on August 30, 1932, her friends and acquaintances began to notice a change in her mental condition, and this change became more marked in 1926 following the death of a sister. Numerous intimate friends and neighbors of decedent testified to her unsoundness of mind and mental incompetency during 1927 and 1928, and that this condition continued to exist until her death. Two physicians, Dr. Joseph Butler and Dr. Bernard Kaufman, gave as their opinions that the testatrix was mentally incompetent in 1928. Dr. Butler, who was her physician since 1918, testified that in his opinion the decedent was incompetent since 1919. Dr. Kaufman, who was called in consultation with Dr. Butler, testified in his opinion she was incompetent in 1928. Richard Barrett, who had been her attorney and legal adviser for a number of years, testified that he had known her and had been intimately acquainted with her since 1907; that he noticed her mind became unbalanced in the early twenties, and that after her sister's death in 1926 she grew worse mentally and from that time on was mentally incompetent. She could not carry on a coherent, connected conversation, and on a number of occasions when she came to his office she would dance around. She offered to deed him some of her real estate but he declined to accept it. Mrs. Miramontes, city tax collector of Redwood City, testified that she had known the testatrix for thirty years; that in her opinion from 1926 on said testatrix was an incompetent person. Mrs. Agnes Coleman testified that she had been a neighbor of testatrix for many years and frequently met and talked with her; that decedent had been a very bright woman until 1925 or 1926; that then there was a marked change in her mentality and in 1928 she was wholly incompetent. Mrs. Emma Lalande said that she had been intimately acquainted with decedent for many years; that prior to 1924 she was a very bright woman; in 1924 she noticed that her mind was failing and she gradually grew worse, her memory failed her, she could not collect her thoughts, and after 1926 she was incompetent. Many other witnesses, friends and neighbors

of decedent, testified that she was an incompetent person in 1928; that her memory had failed; that she would repeatedly ask questions over and over again after they had been answered; that she frequently tried to pay bills that she had already paid; that she danced and recited little poems in the presence of strangers; that she was not able to dress herself; that she could not count money, and often did not recognize people she had known for years; that she could not maintain a conversation but would abruptly switch from one subject to another without finishing the subject about which she had been conversing.

When we take into consideration the mental condition of the testatrix as it existed prior to 1925 or 1926, and compare it with the condition that prevailed after that time and until her death, we can but see that there was a very marked change in her mentality. ''A marked change in a man's habits of thought is strong evidence of his mental unsoundness.'' (*In re Carpenter's Estate,* 79 Cal. 382, 387 [21 Pac. 835].) ■ Proof of the sanity of the testator and of the facts upon which his state of mind depends are not necessarily confined to the exact time of the execution of the will. Evidence of the testator's mental status, together with his appearance, conduct, acts, habits and conversation, both before and after the execution of the will, are admissible so long as they have a reasonable tendency to indicate his mental condition at the time of the execution of the will. Its weight was for the jury to determine. (*Estate of Baker,* 176 Cal. 430–438 [168 Pac. 881]; Alexander on Wills, p. 487, sec. 358.) This is particularly true when the characteristics of the malady indicate a permanent and progressing mental disease. This is the nature of senile dementia. (*Estate of Alexander,* 111 Cal. App. 1 [295 Pac. 53]; *Estate of Ivey,* 94 Cal. App. 576 [271 Pac. 559].) There was substantial evidence to support the verdict of the jury that the testatrix was of unsound mind and incompetent at the time she executed the will. ■ We are also of the opinion that there was sufficient evidence to support the verdict that undue influence was exerted over the mind of the testatrix by Carl E. Wagner.

Wagner became manager of the Redwood City branch of the appellant bank on June 1, 1927. Prior to that time

he had not known the testatrix. He first became acquainted with her at the bank in Redwood City in June, 1927. He immediately began a course of conduct toward her to gain her confidence. Her visits to the said bank became almost of daily occurrence. Wagner would meet her as she entered the bank building and conduct her to his office in the bank, would pat her hand and evince toward her a feeling of exceeding friendship and regard. He would write out her checks and procure for her the money she desired to withdraw. Some six months prior to the date of the execution of the will he suggested to her that she place her property in a trust and execute a will, and from time to time thereafter he renewed these suggestions. He induced her to loan him $8,500, of which sum he obtained $4,500 from her without security although he was a man of limited means. He induced her to loan or give to his two children $600 each, and he finally induced her to place her property in a trust. This trust and the will were executed at the same time. By this trust the sum of $40,000 was set apart in a separate fund, the income from which was to be paid to Wagner to be used by him at his discretion, until October, 1951, for the education of his children. The will and trust agreement were prepared at the San Francisco office, Wagner furnishing the information upon which they were drawn. They were then brought to Redwood City and signed by the testatrix. Wagner testified that before she signed the said instruments he read them to the decedent and then called in two of the employees of the bank and told them that the testatrix had made her will and wished them to sign it as witnesses; that decedent signed the will and then the witnesses signed it, but that the testatrix did not say that it was her will, nor did she ask them to sign it as witnesses. In fact, during the execution of the will, she said nothing. The preparation of the will by a lawyer who obtained all his knowledge from Wagner and was neither requested to consult nor given opportunity of adequate conference with the testatrix speaks volumes against the good faith of Wagner. (*Estate of Nutt,* 181 Cal. 522, 527 [185 Pac. 393].)

█ Appellant next contends that the trial court erred in permitting the cross-examination of Wagner, an adverse

party, called as a witness under section 2055 of the Code of Civil Procedure. He had been the general manager of appellant when the will was executed and had remained such after this action was commenced, but was not in appellant's employment at the date of the trial. In *Estate of McDonald*, 191 Cal. 161, 170 [215 Pac. 545], the court said: "This witness was perfectly competent to testify in the case regardless of the provisions of section 2055 of the Code of Civil Procedure, and it is not shown by appellants that any evidence elicited by way of cross-examination under section 2055 would not have been admissible under the general rules of evidence, nor is it shown in what manner appellants were prejudiced, if at all, by this manner of examining the witness. The method of examining witnesses is largely in the control and discretion of the trial court, and the evidence in question being relevant, it is not important how the examination was characterized." We see no error in this action of the trial court. It brought out facts which would have been brought out later, for the reason that appellant when offering testimony in its own behalf placed this witness on the stand and after his direct examination he was again cross-examined by respondents.

■ Appellant also complains of certain instructions given and refused, but an examination of the instructions as a whole shows that the law applying to this case was fully and fairly given to the jury and covered those refused by the court.

The judgment is affirmed.

A petition for a rehearing of this cause was. denied by the District Court of Appeal on April 30, 1934.