[Civ. No. 14327. Second Dist., Div. One. Mar. 2, 1944.]

Estate of ANNIE B. HULL, Deceased. ALEXINA P. BURGESS et al., Appellants, v. MARTIN F. BOHLE, as Executor, etc., Respondent.

 

Hallam Mathews, Chambers & Lyman and Robert Chambers for Appellants.

Ralph J. Brown, Michael F. Shannon and Thomas A. Wood for Respondent.

WHITE, J.—This litigation involves a contest before probate of the last will of Annie B. Hull, deceased. The contest was instituted by Alexina P. Burgess of Suffield, Connecticut, a sister and sole surviving relative of the decedent, and Hollywood Congregational Church. The defendant and proponent of the will is Martin F. Bohle, who is not related to the testatrix.

At the time of her death on May 24, 1943, the testatrix was a widow of the age of 78 years. The will which gave rise to the instant proceedings was executed March 26, 1943. By it Annie B. Hull sought to dispose of an estate valued at approximately $7,500 and yielding a probable annual income of about $1,000. Under the terms of her will, decedent bequeathed to her sister Alexina P. Burgess, one of the contestants herein, the sum of $500 in cash. All of the rest, residue and remainder of her estate she bequeathed to the proponent and respondent herein, Martin F. Bohle, who was also named as executor without bond, and referred to in the testamentary document as "my dear friend Martin F. Bohle has been very good to me and has looked after me."

As grounds for their objections to the probate of and petition to contest the probate of the aforesaid will of decedent, the contestants alleged first: that at the time she executed said will the testatrix was of unsound mind and memory, and did not possess testamentary capacity to make a valid will. Secondly: that the testamentary instrument was signed by Annie B. Hull while acting under undue influence and fraud of the proponent Martin F. Bohle.

The cause proceeded to trial before the court sitting without a jury, and at the conclusion of the contestants' case the court granted a motion for a nonsuit, and admitted the contested will to probate. Contestants prosecute this appeal from the order granting a nonsuit and from the further order admitting the will to probate.

Stating the facts in a light most favorable to contestants, disregarding any conflict in the evidence, and giving full credit only to that portion of the evidence which tends to support the allegations contained in contestants' petition, as we must do on an appeal from an order granting a nonsuit, the record reflects that in her lifetime Annie B. Hull made three wills; the first of which, dated October 31, 1940, gave the home in which she lived to the church and the residue to her sister; the second testamentary instrument, dated March 8, 1943, gave certain stock to the church and the residue to the aforesaid sister. The contents of the last will are as hereinbefore stated.

About November 1, 1941, the proponent, Martin F. Bohle, met the decedent when he came to her home as a roomer. About the month of May, 1942, Mr. Bohle began taking his meals with the testatrix. About that time he also obtained certain amounts of money from the decedent, according to his testimony approximately $7,000. Mr. Bohle used $5,500 of this amount to make a down payment upon a small ranch, title to which he took in his own name. With other amounts of money received from the testatrix Mr. Bohle purchased three horses, an automobile, house furnishings for the ranch and certain livestock. It also appears from the evidence that Mr. Bohle looked after the decedent's affairs. On January 15, 1943, Mr. Bohle married his present wife. According to Mr. Bohle's testimony, the testatrix was very much perturbed and upset because of his second marriage. On March 8, 1943, which is the date upon which the second will was made, decedent filed an action against Mr. Bohle in the Superior Court of Los Angeles County to recover the property purchased by Mr. Bohle with the money obtained from her. According to the complaint filed in that action she had given Mr. Bohle more than $8,000. On the day following the filing of this action testatrix went to the hospital for an operation, where it was found that she was in the last stages of cancer. From that date until the time of her death she was bedridden. During the time of her hospitalization, after her return home and up to the time of her death, Mr. Bohle and his wife saw the decedent every day, usually twice each day. On March 15th, while decedent was at the hospital she directed her attorneys to dismiss the aforesaid suit she had instituted against Mr. Bohle. On March 25, 1943, decedent was returned from the hospital to her home. The record indicates

that on or about March 18, 1943, the testatrix asked the respondent if he knew an attorney upon whom she could rely, to which he replied in the negative. Thereupon the decedent asked Mr. Bohle if he would inquire of his wife concerning an attorney, which he did. Through a friend, Mrs. Bohle was recommended to an attorney, with whom an appointment was made for Mr. Bohle. The latter called at the lawyer's office, informed him that the testatrix desired to see an attorney and asked the lawyer to come to the Hull residence. On the evening of March 25th the attorney called at the home of decedent, was introduced to her by Mr. Bohle and thereafter the latter was requested to leave the room. The attorney was in consultation with the testatrix for approximately one hour. The next evening the attorney returned with the completed will which was duly executed; the attorney and Mrs. Hull's nurse acting as witnesses. Subsequent to the execution of the will respondent Bohle was called into the room and the testatrix requested that the will be read to him, which was done. Respondent Bohle testified that he had never discussed with the testatrix the matter of a will and at no time until he heard the will read did he know that he was to be a beneficiary thereunder. The attorney who prepared the last will of decedent testified that he called upon her at the request of respondent Bohle; that he was introduced to her by the respondent; that he asked Mr. Bohle to leave the room, and spent about an hour discussing with the testatrix her property and the terms of the will that she desired to make. According to the attorney the testatrix told him that she desired to leave the whole of her estate to the respondent, whereupon he inquired as to any blood relatives she might have and learned from her that she had a sister but did not desire to bequeath anything to such sister. The lawyer testified that after some discussion he suggested that some provision be made for the sister and the sum of $500 was agreed upon. The subscribing witnesses who, as heretofore noted, were the attorney who prepared the will, and the nurse employed by Mrs. Hull, testified to the due execution of the testamentary document and to the further fact that at the time of the execution of the will the testatrix was of sound and disposing mind and memory and not acting under duress, menace, fraud or undue influence of any person. It is also in evidence that on March 26, 1943, the testatrix executed a general power of attorney in favor of respondent Martin F. Bohle.

The lack of mental capacity of the testatrix to make the will in question, though pleaded as a ground of contest in the trial court, is not urged upon this appeal, and the sole question for determination by us is whether the will with which we are here concerned was procured by the undue influence of respondent Martin F. Bohle. Also, whether the evidence produced by appellants at the trial established a prima facie case of undue influence in the making of decedent's will, and therefore, that in granting a nonsuit the court fell into error.

Section 20 of the Probate Code empowers every person of sound mind, over the age of 18 years, to dispose of his or her separate property by will. Such being the case, no such person is called upon to "consult or satisfy the wishes or views of juries or courts" (*Estate of Nolan,* 25 Cal.App.2d 738 [78 P.2d 456]), and because, in the minds of others than the testator, the justice or injustice of a will is a matter of opinion, it is required that a court or jury must determine the question of incapacity only upon that substantial evidence which the law requires. Were the rule otherwise, courts and juries would be permitted to make disposition of a deceased person's property irrespective of the desires of a testator.

However unnatural a will may appear to be and regardless of the fact that it may vary from expressions of the testator in regard to his intentions concerning relatives or the natural objects of his bounty, the will is not invalidated by the claim of undue influence in the absence of an actual showing of some kind of pressure which overpowered the mind and conquered the volition of the testator at the very moment of execution. (*Estate of Burns,* 26 Cal.App.2d 741, 749 [80 P.2d 77].) Appellants, however, rely upon the equally well established exception to this general rule, that where one who unduly profits as a beneficiary under the will occupies a confidential relation to the testator, and has actually participated in procuring the execution of the will, he must assume the burden of showing that neither coercion or fraud upon his part procured execution of the will. In *Estate of Burns, supra,* this court cited numerous cases to support the statement that the confidential relation standing alone is insufficient. *That there must be activity on the part of the beneficiary in connection with the preparation of the will.* Thus, in *Estate of Graves,* 202 Cal. 258, 262 [259 P.

935], relied upon by appellants, the court said: "but in this case it clearly appears that the appellant took an active part in securing the execution of the will at a time when there existed a confidential relation between himself and Mrs. Graves." A similar situation prevailed in *Estate of Hampton,* 39 Cal.App.2d 488 [103 P.2d 611], cited by appellants. In *Estate of Bucher,* 48 Cal.App.2d 465 [120 P.2d 44], also cited by appellants, the court said: "What she knew or did not know about her new will or its contents is not disclosed by any evidence in this record, other than the testimony of the draftsman of the will who was selected for her by the proponent," while in the case at bar both subscribing witnesses testified to the capacity of the testatrix to understand and fully comprehend what she was doing. In *Estate of Miller,* 16 Cal.App.2d 154 [60 P.2d 498], also relied upon by appellants, the decedent, at the time she executed her will was under the influence of opiates, while the beneficiary therein mentioned actively participated in the preparation of the will. In the case before us there was no evidence of any such infirmity or active participation. In *Estate of Hartley,* 137 Cal.App. 630 [31 P.2d 240], cited by appellants, the testatrix resided in Redwood City, while the will was drawn in San Francisco, with the proponent and beneficiary furnishing the information upon which the instrument was drawn. The will was then brought to the testatrix at Redwood City for her signature. The witnesses to the testamentary document, who were fellow employees of the beneficiary, testified that the testatrix did not say that it was her will nor did she ask them to sign it as witnesses. The will being prepared by a lawyer who obtained all his knowledge from the beneficiary thereunder, and who was "neither requested to consult nor given opportunity of adequate conference with the testatrix" as the court said "speaks volumes against the good faith" of the beneficiary. No such conditions or circumstances are present in the case at bar.

In the instant case we are impressed that a confidential relation existed between decedent and respondent herein. In fact, the latter concedes the existence of such a relationship. It may also be conceded that the evidence supports an inference, if not the conclusion, that the relationship existing herein was such as to afford to respondent an opportunity to control the testamentary act of decedent, but as pointed out in *Estate of Graves, supra,* at page 262: "mere proof

of opportunity to influence the mind of the testatrix, even though shown to be coupled with an interest, or a motive to do so, does not sustain a finding of undue influence in the absence of testimony showing that there was pressure operating directly on her testamentary act.'' ▮ Before there is imposed upon the proponent of a will the obligation of presenting evidence of volition, and before the question as to undue influence becomes one of fact for determination by a jury or the court sitting without a jury, there must be evidence, the probative force of which establishes (1) the relations between the one charged with exercising the undue influence and the decedent, affording the former an opportunity to control the testamentary act; (2) that the decedent's condition was such as to permit of a subversion of her freedom of will; (3) that there was activity on the part of the person charged with exercising undue influence, and (4) that such person unduly profited as beneficiary under the will. (*Estate of Graves, supra; Estate of Hampton, supra.*) And a presumption against the validity of the will is not created by the existence of any one of the circumstances just narrated, standing alone. It is only when a combination of all these circumstances is present in the evidence that their probative force is sufficient to justify the denial of a nonsuit, and place upon the proponent of a will the burden of submitting evidence that the testamentary document was executed free from the taint of undue influence.

▮ In the instant case we are unable to find in the record any evidence that the proponent used such influence upon the testatrix as would in effect destroy the latter's free agency and substitute therefor the will or desires of the former. ▮ It is also the law that evidence must be produced that pressure was brought to bear directly upon the testamentary act. (*Estate of Arnold*, 16 Cal.2d 573, 577 [107 P.2d 25].) ▮ And as heretofore pointed out, the mere opportunity to influence the mind of the testatrix is not sufficient to invalidate a will, even though such opportunity is coupled with a motive or interest so to do. (*Estate of Arnold, supra.*) ▮ As we read the record in this case, the only evidence of activity on the part of the proponent of the will is that he obtained the lawyer who prepared the document. However, the sole evidence in that regard is that the proponent contacted a lawyer at the request of the testatrix, and the lawyer in question was not the proponent's attorney, but one

recommended through inquiry made of a friend of proponent's wife. The testimony of the lawyer who prepared the will, as well as that of the proponent, is uncontradicted to the effect that neither made any suggestions as to the contents of the will save and except that the attorney suggested that provision be made for the sister of the testatrix. The evidence further shows that the proponent was not present at any time while the attorney consulted with the testatrix, and that all of the information was obtained by the draftsman of the will from the testatrix herself. All the evidence in the record is to the effect that the will as drawn embodied and reflected the wishes and desires of the testatrix unaffected by any suggestion, influence or coercion on the part of proponent or anyone else. It is true, of course, that the proponent was called as a witness pursuant to the provisions of section 2055 of the Code of Civil Procedure, and contestants were entitled to rely only upon such portion of his evidence as was favorable to their cause and were not bound by such adverse testimony as was given by this witness called under the cited code section. But, the testimony nevertheless remained in the record and was not contradicted. As a matter of fact, the testimony of the proponent was to a degree at least corroborated by both of the subscribing witnesses to the will who testified unequivocally that, in their opinion, the testatrix, at the time of the execution of the testamentary document was of sound and disposing mind and was free from any undue influence, fraud or coercion. There is no evidence that respondent ever discussed with the testatrix the matter of making a will, that he knew of her intention so to do, or that he was to be a beneficiary under the will, until after its execution, when at the request of the testatrix, he was called into the room and at her direction the will was read to him. ■ In the absence of evidence it cannot be assumed that a person is guilty of wrongdoing. On the other hand, it must be presumed in the absence of evidence to the contrary, that one is innocent of crime or wrong. (Subd. 1, sec. 1963, Code Civ. Proc.) ■ The burden was on the contestants to show undue influence, and in meeting that obligation it is not sufficient for them merely to show circumstances consistent with the exercise of undue influence, but before a duly and solemnly executed will can be invalidated, circumstances must be shown that are inconsis-

tent with freedom of action on the part of the testatrix. (*Estate of Burns, supra.*)

From what he have herein stated, it follows that a verdict in favor of contestants could not have been held to have sufficient support in the evidence, and therefore, the trial court committed no error in granting the motion for a nonsuit.

The orders appealed from are and each is affirmed.

York, P. J., and Doran, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 27, 1944.