[Civ. No. 16308. Second Dist., Div. Three. May 26, 1948.]

Estate of WILLIAM HILKER, Deceased. MINNIE D. HILKER, Appellant, v. ROY E. HILKER et al., Respondents.

Elza C. Mowry for Appellant.

J. J. Hughes and Stanley M. Evans for Respondents.

SHINN, Acting P. J.—Minnie D. Hilker, widow of William Hilker, deceased, appeals from a judgment of nonsuit in a

contest initiated by her for revocation of the probate of her husband's will. She charged undue influence of Roy E. Hilker in the making of the will, and alleged upon information and belief that the will was not subscribed by decedent or by anyone with his authorization. The latter ground of contest was abandoned by petitioner at the trial. Roy E. Hilker and Helen Hilker, his wife, answered the petition and a trial upon the sole issue of undue influence resulted in the judgment of nonsuit. The question on appeal is whether the evidence of the contestant given only the construction, application and effect most favorable to her would have been sufficient to support a finding that Roy E. Hilker exercised undue influence upon decedent in the making of the will. We shall proceed to a résumé of the evidence.

William Hilker was 81 years of age at the time of his death on December 8, 1945. When he married appellant in 1935, he was a widower and childless. He died without issue, leaving surviving him, in addition to appellant, Walter L. Hilker and Roy E. Hilker, sons, and Leona H. Hadsell, daughter, of a deceased brother, and Frank Fetter and Alma Wissinger, children of a deceased sister. He was possessed of an estate which was appraised at approximately $75,000. The bequests of the will were $1,000 to appellant, $500 to Frank W. Dillon, son of appellant, $500 to the wife of Frank Dillon, and $500 to Helen Hilker, described in the will as a niece of decedent. The remainder of the estate was left to Roy E. Hilker and in case of his predeceasing the testator, to Helen Hilker. Roy E. Hilker was appointed executor, and Helen Hilker was appointed executrix in the event her husband should predecease the testator, bond in each case being waived.

Appellant's evidence consisted solely of the testimony of Roy E. Hilker, which was in substance as follows: He, Roy, is 59 years of age; he visited in California with his family some time in the fall of 1904; he came to California shortly thereafter to stay, and for about a year lived with his uncle, William; he was employed by his uncle for about six years and until his uncle obtained employment for him in San Diego, and he worked off and on for his uncle until he went into business for himself; there was a very close relationship between the two, and William treated Roy as he would a son; he never was in business with his uncle but there had been some business dealings between them; in 1928 or 1929, at the time Roy was married, he borrowed $2,500 from William upon his

unsecured note, and after the death of William's wife in 1932 he, without solicitation by Roy, cancelled the note. Roy became the father of a son and William, before his second marriage, paid $1,000 for an insurance policy upon the life of the son, payable to William if the son predeceased him, and to the son if he survived William. Shortly thereafter, the policy was increased to $3,000 on the same terms. Also shortly after the death of William's first wife he gave Roy $300 and a like amount to Roy's brother and his sister. Upon another occasion Roy loaned his uncle $4,000 with which to make an investment; at times he made him other loans of smaller amounts, and all these sums were repaid. It was alleged in the petition that for a period of at least five years immediately preceding the date of the will Roy had acted as agent for William, collected his rents, looked after his property for him, deposited money in his, Roy's, account, advised him on matters of business and exercised great influence over him to the extent, as alleged, of substituting his will for that of decedent in the disposition of decedent's estate. It was alleged that decedent reposed trust and confidence in Roy. The answer admitted that for about three years immediately preceding the date of the will Roy acted as agent for decedent in the collection of rents; that he had deposited collections in his own account to an amount of not to exceed $100, and it was admitted that for some five years he had acted for decedent in attending to the repair and maintenance of his rental properties and advised decedent concerning said properties. It was also admitted that decedent did repose trust and confidence in Roy in these matters, but it was denied that Roy had acted for or advised decedent in any other matters, or that decedent was guided or influenced by his advice or suggestions. Such was the evidence as to the relationship existing between the two men.

The evidence touching the execution of the will was the following: Helen Hilker was a beneficiary under the will of Julia Voss, whose estate was settled in 1936; a Mr. Hughes acted as attorney for the estate and Roy became acquainted with him at that time; William expressed a desire to meet Mr. Hughes and in 1936, Roy took him to Mr. Hughes' office and introduced him; Roy remained for about five minutes during which there was no discussion of business, and when he left William remained with Mr. Hughes; the occasion for the visit was not disclosed. So far as disclosed by the evi-

dence, the next meeting between William and Hughes was in February, 1938, when William visited Hughes' office and the will in question was prepared. Stanley Evans, an associate of Hughes, was one of the subscribing witnesses. On that occasion William telephoned to Roy and arranged a meeting in Pershing Square near Hughes' office. When they met, William handed Roy his executed will contained in an envelope; Roy took the will home, showed it to his wife and kept it in his possession until the death of William. He had never at any time discussed with William the making of a will. He had met Mr. Evans in the office, but neither Hughes nor Evans had ever acted for him or his wife as attorney, and there was no evidence that the matter of William's will was ever mentioned until after the death of William when Hughes called Roy and told him he should file the will for probate. There was no evidence that William, at the time he executed the will, was suffering from any physical or mental weakness or was not in full possession of his faculties, his age considered. There was no evidence to suggest that he was unable to look after the matters of business which he delegated to Roy or that the services of the latter were more than a mere convenience to William. It is clear from the above recital that there was not a shred of evidence tending to show any effort of whatsoever nature on the part of Roy to encourage his uncle to make a will, or to influence him in the slightest in the matter of disposing of his estate. Almost eight years elapsed between the making of the will and the death of William. Presumably he was living with appellant during that time. So far as shown, he was mentally able to remember and understand the terms of his will, and perfectly free from any influence or pressure to induce him to change the will or not to change it. The evidence furnishes no basis for a doubt that the testator formed his desires, which he expressed in the will, unaided and uninfluenced by others. The facts do not justify a presumption that undue influence was exercised by Roy. That decedent entertained a considerable degree of affection for his favorite nephew cannot be doubted. It was but natural that the nephew would be called upon for the inconsequential assistance that the uncle required. William was childless, it happened that one of his nephews came into his employ, that a close relationship sprang up between them, and that the nephew enjoyed a greater degree of affection than the other relatives. There is nothing unusual

in a man's caring more for some of his relatives than for others, and there certainly is no principle of law or justice that deprives him of the right to give expression to his feelings by gifts during his lifetime, or in the division he makes of his estate by will.

The will contained the following provisions: "I further declare that all the property I possess, whether real or personal, is my sole and separate property; that I owned all of said property, aside from certain rents, issues and profits of my separate property, prior to my marriage to my present wife, and for that reason and for the further reason that my present wife is well provided for in her own right, I make no provision for her, except in this will provided. . . . After the payment of my just debts, funeral expenses and expenses of administering my estate, because of the loyalty and constancy, always, of my beloved nephew, Roy E. Hilker, I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed, of whatsoever kind the same may be or wheresoever situated, of which I die possessed or to which I may be entitled, to the said Roy E. Hilker, his heirs and assigns forever. Should Roy E. Hilker predecease me, all of my estate to which he would have been entitled, had he survived me, I give, devise and bequeath to Helen Hilker, wife of said Roy E. Hilker."

The amended petition for revocation of the will contained the following allegation: "That, during said period, preceding the alleged execution of said purported will, said Roy E. Hilker stated to decedent that your petitioner, the wife of said decedent, was a wealthy woman and possessed property of the value of $100,000.00; that said statements were untrue, known by said Roy E. Hilker to be untrue and made by him for the sole purpose of influencing the mind and will of said decedent; that said decedent believed the said false statements and was so influenced thereby in the execution of said purported will."

At the time of trial appellant moved to strike this paragraph from her petition and the motion was granted. In view of the fact that decedent stated in the will as one of the reasons for the small bequest of $1,000 to appellant that she was well provided for in her own right it is quite significant that having made an issue of the correctness of this statement in the will she was unwilling to attempt to prove that it was a false or erroneous statement. The will also states the appreciation

of the testator of the loyalty and constancy of Roy and expresses affection for him. These recitals, based upon beliefs reasonably entertained, furnish a satisfactory explanation for the small bequest to the wife and the generous provision for the nephew, and it must be remembered also that appellant had only been William's wife for some three years at the time he made his will. Moreover, it is to be presumed that in the eight years that elapsed before the testator's death nothing occurred which was deemed by him a sufficient reason for altering the terms of the will with respect to either his wife or his nephew.

Where there is no direct evidence of the exertion of undue influence and it is claimed that the evidence of circumstances preceding and attending the making of the will are sufficient to shift the burden of proof on that issue to the proponent, such evidence must show "(1) the relations between the one charged with exercising the undue influence and the decedent, affording the former an opportunity to control the testamentary act; (2) that the decedent's condition was such as to permit of a subversion of her freedom of will; (3) that there was activity on the part of the person charged with exercising undue influence, and (4) that such person unduly profited as beneficiary under the will." (*Estate of Hull,* 63 Cal.App.2d 135, 142 [146 P.2d 242].) No one of these evidentiary requirements was met. A relationship between the testator and his nephew that would have afforded the latter an opportunity to control the testamentary wishes of his uncle was not established by evidence that the uncle trusted the nephew to collect his rents and attend to the upkeep of his property, especially where there was no evidence that he was dependent upon or received personal or business advice from the nephew in other matters and was at all times residing with his wife. The testator was not shown to have been susceptible to the influence of Roy Hilker or any other persons with respect to the terms of his will. There was no evidence of any activity of Roy in connection with the making of the will. The will stated sufficient reasons for the disparity in the provisions made for testator's wife and his nephew. It was not shown that he acted under a mistaken belief that his wife was well provided for financially or that his nephew had always shown toward him loyalty and constancy and enjoyed his uncle's affection. It was for him, not for the court, to be satisfied with the

reasons upon which he acted and to determine whether the terms of the will were just and fair. (*Estate of Shay*, 196 Cal. 355, 364 [237 P. 1079]; *Estate of Packer*, 164 Cal. 525, 528 [129 P. 778].) The evidence was so obviously insufficient to establish the charge of exertion of undue influence as to require no further discussion.

The judgment is affirmed.

Wood, J., and McComb, J. assigned, concurred.