[Civ. No. 7252. First Appellate District, Division Two.—January 23, 1930.]

In the Matter of the Estate of JOHN HARNEY, Deceased. JULIA HARNEY, Respondent, v. JOHN J. GARVEY et al., Appellants.

Frank W. Hooper and Albert M. Hardie for Appellants.

Stanley R. Sterne and Richard Liebman for Respondent.

STURTEVANT, J.—After the death of John Harney, John J. Garvey filed a petition asking that a certain document be admitted to probate as the will of the deceased. Julia Harney, the surviving widow, appeared and filed an opposition to the petition. The opposition was answered and a trial was had before the court sitting with a jury. The jury returned a verdict in favor of the contestant. The verdict consisted of two special verdicts. By the terms of the first one the jury found that the decedent was not of

sound mind at the time the alleged will was executed and by the second verdict it found that he was acting under undue influence. From a judgment entered on the verdict the proponents have appealed and have brought up typewritten transcripts.

■ The proponents claim that the evidence produced by contestant was insufficient. Before proceeding to discuss the point further it should be noted that the parties proceeded on two distinct lines. In her case in chief, the contestant introduced proof tending to show that from the eighteenth day of April, 1928, until the fourteenth day of May, 1928, the date of the death of the decedent, that the decedent was in the last stages of the disease from which he died. Covering said period of time the contestant took the stand in her own behalf and testified to the things that she observed and she called certain intimate acquaintances who testified to things that they had observed and then she called certain doctors who testified regarding the examinations which they had made and the conclusions they formed after making said examinations. One of those doctors was a specialist in nephritis or Bright's disease. Going further, she called another doctor whose specialties are nervous and mental diseases. To the latter her attorney propounded a hypothetical question based on the history of the case as told by the witnesses just mentioned. In this manner she produced testimony to the effect that from April 18, 1928, the decedent was suffering from senile dementia with associated arterio-sclerosis. That said disease was progressing from day to day. That from these causes the brain cells had become dead and that on the twenty-sixth day of April, 1928, the decedent no longer had any mentality, but that at that time ''he was a vegetable, no mental capacity.'' On the other hand the proponents called as witnesses the two witnesses of the will, the executor named in the will, the attorney who drew the will, and others. From said persons the proponents elicited testimony to the effect that during the afternoon on which the will was drawn and at the particular time at which it was drawn and signed, they talked to the decedent and he talked to them or in their presence, and from said conversation they formed the opinion that the decedent was of sound mind. If the jury believed the testimony given by the witnesses for the contes-

tant then the verdict of the jury which was to the effect
that the decedent was of unsound mind is abundantly sup-
ported by the evidence. The evidence went further than
the verdict—it was to the effect that at said time the de-
ceased had no mind.

In the next place the proponents contended that the
verdict of undue influence was against both the evidence
and the law. We have just shown that the verdict based on
unsound mind was abundantly sustained. That being so,
it is immaterial whether the verdict based on undue influ-
ence was sustained or was not sustained. (*Estate of Baker*,
176 Cal. 430, 437 [168 Pac. 881].) We need not
further consider the point. However, it is only fair to the
trial court and the jurors to state that it cannot be said
that the evidence was insufficient to support the verdict of
undue influence.

When introducing the case for the proponents one
of their attorneys took the stand as a witness. On cross-
examination he was asked if he was going to call Dr. Parker
as a witness for the proponents. The proponents objected
to the question and the objection was sustained. There was
no claim in the trial court that the mere propounding of
the question was misconduct and the trial court was not
asked to rule thereon. It is too late at this time to claim
misconduct.

After the jury had been out some time it returned into
court and the following proceedings were had: "The Court:
The jurors are present. Ladies and gentlemen, have you
agreed upon a verdict? Juror Love: Your Honor, the jury
would like to know if Mr. Sterne would have had the right
to put Dr. Parker on the stand before he closed his case?"
Thereupon followed a colloquy covering nearly five type-
written pages. The proponents assert that "The comment
of the court tended to call the attention of the jurors to the
fact that Dr. Parker could be called by contestant but that
they did not have the right to go into the enemy's camp if
they chose." They do not print in their brief any language
which supports them. We have read the transcript and we
do not find anything in the language used by the trial court
that was in the least improper.

The proponents assert that the verdict was contrary to the
evidence measured in terms of law. In this connection they

quote from *Estate of Sexton*, 199 Cal. 759, 768 [251 Pac. 778, 782] : ''Ability to transact important business, or even ordinary business, is not the legal standard of testamentary capacity; though it seems to be quite generally but mistakenly supposed, outside the ranks of the legal profession, that a capacity to transact important business is the criterion of fitness to make a valid will.'' The contestant did not assume the law to be different than as just quoted. On the contrary, she was at great pains to develop the facts that at the time the decedent made the purported will he did not have sufficient mental capacity to understand his relation to his relatives and those around him with a clear remembrance as to those in whom, and those things in which he was mostly interested; nor to be able to understand and carry in his mind the nature and situation of his property; nor to understand the act he was doing; nor to understand the relation in which he stood to the objects of his bounty free from any delusions or effect of disease which might lead him to dispose of his property otherwise than he would if he knew and understood what he was doing.

The proponents assert misconduct on the part of the jurors. They do not claim it was shown by the reporter's transcript. In the trial court they attempted to use affidavits of jurors. They were not entitled to do so. (*Rosenberg* v. *George A. Moore & Co.*, 194 Cal. 392, 396 [229 Pac. 34].) Disregarding the affidavits of jurors and addressing ourselves to the other evidence, the record shows that the affidavit of Mattie Frazier was fully contradicted by the affidavit of Juror Jones. The affidavit of John J. Garvey does not show any misconduct and if he knew of any it was his duty to have called the matter to the attention of the court and not to wait and take a chance on a favorable verdict. Furthermore, if we assume that all of the affidavits were competent evidence, the affidavits do not disclose any misconduct on the part of the jury that was prejudicial to the rights of either party.

The proponents contend that their motion for a new trial should have been granted. In this behalf they rely upon the alleged misconduct of a juror. That subject has already been considered and we need not repeat what has been said above.

■ Other objections are presented, but no portion of the record is quoted, no argument is made, and no authorities are cited calling upon the court to pass on the points.

We find no error in the record. The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 21, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1930.

All the Justices present concurred.