[Civ. No. 17878. Second Dist., Div. Three. Feb. 2, 1951.]

Estate of CHARLES S. FRANK, Deceased. RUBY K. TROMLEY, Respondent, v. JANE F. COX, Appellant.

Joseph D. Taylor and Gilligan & Pratt for Appellant.

Dudley Robinson for Respondent.

VALLÉE, J.—Appeal by Jane F. Cox from (1) a judgment entered on a verdict of a jury denying probate of an alleged will of Charles S. Frank, deceased, dated September 27, 1948, proffered by her, (2) an order admitting decedent's holographic will of July 26, 1946, to probate, proffered by respondent Ruby K. Tromley, and (3) an order denying her motion for a judgment notwithstanding the verdict.

On June 21, 1948, the decedent, Colonel Charles S. Frank, seriously ill with cancer, entered an Army hospital. On August 5, 1948, he was operated upon but his condition became progressively worse as the cancer spread. On October 6, 1948, he died at the age of 76 years. He was a widower, with no surviving issue. Respondent was a close and trusted friend of decedent for some 15 or 16 years. Appellant was also a friend whom decedent had known for about the same length of time.

On October 8, 1948, appellant filed the will of September 27, 1948, for probate. By this will, a witnessed one, decedent bequeathed $1,000 to respondent and the residue to appellant. It was contested by respondent, who, in turn, filed the holographic will of July 26, 1946, for probate, which left decedent's entire estate to her. The contest was tried upon the grounds, and the jury found, that decedent was of unsound mind and that the will was not executed in the manner and form required by law. The issue of unsoundness of mind was predicated upon decedent's alleged mental degeneration due to his advanced age and the ravages of the disease which ultimately caused his death.

Appellant challenges the sufficiency of the evidence to support the jury's findings, and complains of prejudicial error in the giving of an instruction.

The function of an appellate court is no different on an appeal from a judgment denying probate of a will because of mental incompetency than in any other case. "All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial judge or jury. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Estate of*

*Teel,* 25 Cal.2d 520 [154 P.2d 384].)'' (*Estate of Trefren,* 86 Cal.App.2d 139, 142 [194 P.2d 574].)

The evidence showed that from the time decedent entered the hospital until his death, he was in the terminal stages of cancer, which had spread throughout his entire system. The disease had paralyzed his vocal cords to such an extent that after his operation it became increasingly difficult for him to speak above a whisper for even a short period of time or to make himself understood. Several witnesses, all of whom were intimately acquainted with decedent, testified that during the last two or three weeks of his life his speech became so unintelligible that they were unable to understand him. The attending hospital physician testified that he had difficulty in understanding decedent at times and that in the last two or three weeks before his death he had difficulty in getting answers to such simple questions as the location of pain, what decedent had had to eat, and questions of similar import. Of these witnesses, four intimate friends and two close relatives testified to marked physical and mental changes they observed in decedent during his hospitalization and especially following his operation on August 5th. The changes specifically mentioned were decedent's inability to make himself understood shortly after September 1st and during the last two or three weeks of his life; his inability to intelligently carry on a conversation; his lack of interest in his surroundings and in those who visited him; his failure to recognize his close relatives; certain mental vagaries; and his inability to normally engage in even a simple business transaction, such as signing checks, which led one witness who had had dealings with decedent before and in the early days of his hospitalization, to conclude that it was impossible for decedent ''to dictate a will or any other instrument either physically or mentally'' after September 1st. A number of intimate acquaintances testified that decedent was not of sound and disposing mind during the last two or three weeks preceding his death and gave their reasons for their opinions. The weight of their testimony was for the jury. Parenthetically, the disputed will was executed nine days before decedent's death.

The jury, by its verdict, and the trial judge, by his denial of the motion for judgment notwithstanding the verdict, were reasonably justified in concluding from the foregoing résumé of the evidence, as well as from other circumstances appearing

in the record, that decedent was of unsound mind during the last two or three weeks of his life, and in inferring therefrom that such mental incompetency existed at the time of the execution of the will.

Appellant relies upon the presumption of testamentary capacity and upon the testimony of the witnesses present at the time of the execution of the will—the attorney who drew the will and the two subscribing witnesses—as conclusively establishing decedent's mental soundness at the time the will was executed. She argues that there was no evidence presented by contestant showing that decedent was not mentally competent at the very moment he executed the disputed will and, therefore, no evidence to support the jury's finding of mental incompetency. ■ While it is true that the critical inquiry in determining the mental capacity of a person to execute a will is his condition of mind at the time of its signing, nevertheless, proof of the unsoundness of mind of a testator and of the facts upon which his state of mind depends is not necessarily confined to the exact time of the execution of the will. Evidence of the testator's mental status, together with his appearance, conduct, acts, habits and conversation, both before and after the execution of the will, are admissible so long as they have a reasonable tendency to indicate his mental condition at the time the will was executed. (*Estate of Dupont,* 60 Cal.App.2d 276, 285 [140 P.2d 866]; *Estate of Miller,* 16 Cal.App.2d 154, 165 [60 P.2d 498]; *Estate of Alexander,* 111 Cal.App. 1, 7 [295 P. 53].) It cannot be said that the testimony of contestant's witnesses did not indicate decedent's mental condition at the time of the execution of the will.

■ The testimony of witnesses who were present at the time of the execution of a will as to the soundness of mind of the testator is not conclusive against the testimony of other witnesses who saw the testator within a few days of the execution of the will and the other circumstances in the case. (*Estate of Miller, supra,* p. 165; *Estate of McDonald,* 191 Cal. 161, 167 [215 P. 545]; *Estate of Harney,* 103 Cal.App. 349, 351 [284 P. 464].) The presumption of testamentary capacity and the testimony of the witnesses present at the time the will was executed merely created a conflict which was resolved by the jury in favor of respondent.

By reason of the foregoing it is unnecessary to consider whether the finding that the will was not executed in the manner and form required by law is supported by the evidence.

The challenged instruction,[1] which appellant argues was prejudicial, was requested by respondent. It should not have been given. That portion of the instruction to which appellant objects,—"If executed before witnesses who in writing probably have attested the soundness of mind of the testator, such witnesses may scarcely be presumed to be willing to stultify their former solemn declarations"—is argumentative, an invasion of the province of the jury, and not a statement of law. However, the instruction merely told the jury a mere commonplace proposition within the general knowledge of the jurors—that when a person has once attested, in writing, to what may be deemed a "solemn" declaration, it is unlikely that he will at some later time repudiate such attested "solemn" declaration. It has frequently been held that the giving of an instruction, although erroneous, will not be held reversible error where, by it, the jury is instructed as to a mere commonplace matter within their general knowledge. (See *Medlin* v. *Spazier*, 23 Cal.App. 242, 245-246 [137 P. 1078] ; *Egan* v. *Bishop*, 8 Cal.App.2d 119, 124 [47 P.2d 500] ; *Hirshfeld* v. *Dana*, 193 Cal. 142, 143, 160 [223 P. 451] ; *Estate of Keegan*, 139 Cal. 123, 127 [72 P. 828] ; *Davis* v. *McNear*, 101 Cal. 606, 609 [36 P. 105] ; *Whitaker* v. *California Door Co.*, 7 Cal.App. 757, 759 [95 P. 910] ; *Goss* v. *Steiger Terra Cotta*

---

[1] "You are instructed that ordinarily, it may be said that on the contest of a will on the ground of unsoundness of mind of the testator the particular issue to be submitted for the determination of the jury is whether at the time of the execution of the will the testator was possessed of testamentary capacity. Naturally, the contestant of a will is rarely able to produce any evidence favoring his contention excepting that which relates to conditions surrounding the testator either before or after the will was executed. If executed before witnesses who in writing probably have attested the soundness of mind of the testator, such witnesses may scarcely be presumed to be willing to stultify their former solemn declarations. And so it happens that, in the nature of things, what transpired at the exact moment when the testator affixed his signature to the document and when the witnesses, if any, certified to the facts required by the statute are facts ordinarily extremely difficult of production by the contestants, or, if such facts be within his ready power to produce, are quite in conflict with the other evidence by which the contestant may hope to sustain his theory of the case. Consequently for the support of his cause the contestant must rely upon a showing of conditions existing either preceding or following, or both preceding and following the precise moment when the testator signed his purported will.

"While the ultimate question always is whether at the very instant the will was executed, was the testator of sound mind, nevertheless testamentary capacity may be indicated by circumstances and conditions surrounding the testator both before and after the execution of the will, respectively, just as certainly, clearly, and unmistakably as by evidence of what was the general conduct and condition of the testator at the very instant that the testator affixed his name to the instrument."

*etc. Wks.*, 148 Cal. 155, 156 [83 P. 681] ; *Estate of Nutt*, 181 Cal. 522, 529 [185 P. 393] ; 24 Cal.Jur. 840, 850, §§ 99, 107.) While error, the giving of the instruction was harmless. We do not believe it was so prejudicially erroneous as to require a reversal of the judgment or that the verdict would have been different had it not been given. After an examination of the entire cause, including the evidence, we cannot say that the error complained of resulted in a miscarriage of justice. (Const., Art. VI, § 4½.)

The judgment denying probate of the will of September 27, 1948, and the order admitting to probate the will of July 26, 1946, are, and each is, affirmed. The appeal from the order denying the motion for judgment notwithstanding the verdict is dismissed. This order is nonappealable. (Prob. Code, § 1240; *Estate of Hart,* 92 Cal.App.2d 691, 696 [208 P.2d 59].)

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied February 19, 1951, and appellant's petition for a hearing by the Supreme Court was denied April 2, 1951. Schauer, J., voted for a hearing.