[Civ. No. 5216. Fourth Dist. Jan. 3, 1956.]

Estate of WILLIAM H. LUHR, Deceased. LOUIS HINTZE et al., Respondents, v. ELLENE COMSTOCK et al., Appellants.

Head, Jacobs, Corfman & Jacobs for Appellants.

Rutan, Tucker, Howell & Tucker and Richmond, Bradley & Barnes for Respondents.

MUSSELL, J.—William H. Luhr died in Orange County on October 3, 1953, at the age of 71 years, leaving an estate consisting of real and personal property. On October 9, 1953, a petition for probate of his will, which was dated May 26, 1950, and a codicil thereto dated July 11, 1950, was filed by Ellene Comstock, the executrix named in said will. Respondents herein, heirs at law or related to decedent, filed a contest of the will before probate and the matter was tried before the court sitting with a jury. The jury rendered special verdicts that the decedent was not of sound mind at the time he executed his will on May 26, 1950, and at the time he executed the codicil thereto on July 11, 1950. The trial court thereupon rendered judgment denying probate of the will and Ellene Comstock et al., appeal from the judgment. The sole question involved is whether there was substantial evidence to support the findings of the jury and the judgment.

As is said in *Estate of Frank,* 102 Cal.App.2d 126, 128-129 [226 P.2d 767]: "The function of an appellate court is

no different on an appeal from a judgment denying probate of a will because of mental incompetency than in any other case. 'All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial judge or jury. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Estate of Teel*, 25 Cal. 2d 520 [154 P.2d 384].)' (*Estate of Trefren*, 86 Cal.App. 2d 139, 142 [194 P.2d 574].)''

There is evidence in the record showing that during 1949, when the testator lived at Orange, California, his rooms were extremely filthy and dirty. One witness, a Rev. Riedel, testified that this condition existed in 1948 and 1949; that often Luhr would show him imaginary insects; that he would pick on his scalp and imagine he had found worms or bugs there; that he accompanied Luhr to Minnesota, in July or August in 1949, and that Luhr was taken to the Mayo Clinic on August 15, 1949; that while in the waiting room of the clinic Luhr imagined that the room was full of caskets.

The Mayo Clinic hospital report shows that Luhr was somnolent; that he knew his name but not his age, thought he was in Orange, California and that it was 1948; that he could be aroused easily but only for a few sentences of conversation. The diagnosis was ''diabetes mellitus, cerebral arteriosclerosis, senility with early dementia, uremea''; ''fellows interpretation: senile dementia with central nervous system arteriosclerosis''; ''judgment is not of the best, but probably competent for making a will.''

Luhr returned to California and on January 2, 1950, Mr. Tucker, an attorney, called at his home with reference to guardianship proceedings. Mr. Tucker testified that ''The kitchen was full of dirty dishes and food lying all over the floor. There was excretion from the human body on places on the floor; the odor was horrible. The old man was sitting there with his head bowed on a chair in the middle of the kitchen.'' A petition for appointment of guardian for Luhr was filed in Orange County and on January 13, 1950, he was adjudged an incompetent person, unable to care for himself or his person. Mr. Tucker visited Luhr many times during 1950 and testified that in his opinion Luhr was definitely feeble-minded and could not talk coherently.

Mary Butterfield, a registered nurse employed in 1950 to

take care of Luhr, testified he was diabetic; that his eyes were weak and he could not read; that he would cut his underwear, saying he was trying to get the bugs that were on his body; that the hallucinations about the bugs continued during June and July, 1950; that Luhr imagined he saw live lizards with two or three heads and that there were goats in the yard; that he had hallucinations about an oil well in his backyard and stated that he had a little oil well there. Miss Butterfield was of the opinion that Luhr was "weak-minded in the year 1950."

Mr. Schroeder, a banker, testified that in May, 1949, Luhr asked him to pay his taxes on Minnesota farm land; that Luhr could not tell him where the farms were and stated that he thought he had three farms but did not know how many acres were included in them; that Luhr stated he had a farm in North Dakota but did not know how many acres were in it or where it was located. When asked for his opinion as to the condition of Luhr's mind in 1949, Mr. Schroeder stated that it was "Rather weak or dull."

Rubin Hintze, a farmer in Spring Valley, Minnesota, stated that Luhr told him he had two farms in Spring Valley, one containing 279.63 acres and the other containing 160 acres. The record shows that Luhr did not have a 120 acre farm in Spring Valley which he devised to Ellene Comstock in his will.

Mrs. Engel, who had known Luhr for many years, testified that in her opinion he "Had the mind of a child or worse" in 1950.

Mrs. Crane, a next door neighbor, testified that she saw Luhr many times before and after a guardian was appointed for him; that he had delusions that he had an oil well in his backyard and that there were snakes out in the street. She testified further that in her opinion Luhr was "Very weak-minded in the year 1950."

Dr. William S. Musfelt, who specialized in neuropsychiatry, testified that he examined Luhr on October 2, 1950, that Luhr told him he had farms but that he did not know how many or what they consisted of; that Luhr did not know what day of the week it was or what year; that he had a cerebral arteriosclerotic condition. The doctor testified further that in his opinion Luhr had senile dementia on October 2, 1950; that "He wasn't just senile and childish. He had motor defects. He couldn't do much of anything that wasn't automatic. He could walk, yes, but he wasn't able to look after himself, his person or his property." When asked if he had

an opinion as to whether Luhr knew the nature and extent of his property at a date five months previous to October 2, 1950, the doctor answered as follows: "Possibly the nature of it but not the extent"; that if the will involved had been read to Luhr on May 26, 1950, he would not have known the significance of it.

Evidence of Luhr's mental status, together with his appearance, conduct, habits and conversation, both before and after the execution of the will, were admissible so long as they had a reasonable tendency to indicate his mental condition at the time the will was executed. (*Estate of Frank*, 102 Cal.App. 2d 126, 130, *supra*.) The foregoing evidence indicates decedent's mental condition at the time of making the will involved and that he was not then of sound mind. While there is testimony in the record by witnesses who were present when the will was executed and by other witnesses who were acquainted with Luhr that he was of sound mind at the time he made his will, such testimony merely created a conflict and is not conclusive against the testimony of other witnesses who saw the testator both before and after the making of the will and as against the other circumstances in the case. The rules of evidence, the weight to be accorded and the province of a reviewing court, are the same in a will contest as in any other civil case, and in reviewing the evidence, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) The inferences which the jury drew from the facts are supported by substantial evidence and we are without power to substitute our deductions for them.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied February 29, 1956.